**DELPHAX SYSTEMS, INC., Plaintiff,**

v.

**MAYFLOWER TRANSIT, INC., Defendant.**

**No. Civ.A. 98–10093–NG.**

United States District Court, D. Massachusetts.

June 14, 1999.

Robert W. Harrington, Law Office of Robert W. Harrington, Boston, MA, for Delphax Systems, Inc., plaintiff.

Wesley S. Chused, Looney & Grossman, Boston, MA, for Mayflower Transit, Inc., defendant.

## MEMORANDUM AND ORDER

GERTNER, District Judge.

This case concerns a damaged computer printer, the damage to which is worth, according to plaintiff Delphax Systems, Inc. ("Delphax"), $29,670. Delphax is suing under the Carmack Amendment to the former Interstate Commerce Act, presently the ICC Termination Act of 1995, 49 U.S.C. § 14706. Defendant Mayflower Transit, Inc. ("Mayflower") moves for summary judgment on the ground that Delphax failed to file a timely claim in writing with Mayflower within nine (9) months of the date on which the shipment was delivered. According to Mayflower, this was a condition precedent to recovery under Mayflower's bill of lading and applicable government regulations. Delphax not only opposes this motion for summary judgment, but submits a cross-motion. For the reasons stated below, Mayflower's Motion for Summary Judgment (docket # 23) is **GRANTED,** and Delphax's Cross–Motion for Summary Judgment (docket # 27) is **DENIED.**

## I. *FACTUAL BACKGROUND*[1]

On or about June 29, 1995, Mayflower picked up and issued a bill of lading for a shipment of machines owned by Delphax. The machines were picked up at the Jacob Javits Convention Center in New York, New York, and shipped to Delphax's Canton, Massachusetts facility. The shipment included a Presidax Model 850 Image Fast

---

1. Delphax moves (docket # 35) to strike the affidavits of Deborah Durham and Stanley Eisen, presenting crucial documents for Mayflower. The motion is groundless and **DE-**

**NIED.** The documents presented are. corporate documents kept in the ordinary course of business and already disclosed to Delphax.

Printer. On July 5, 1995, the printer arrived in damaged condition, and the damage was noted by Delphax on the bill of lading.

The bill of lading provided that the shipment was accepted by Mayflower for interstate transportation "... subject to classifications, tariffs, rules and regulations, including all terms printed or stamped hereon or on the reverse side hereof in effect on the date of issue on this bill of lading."

Section 6 of the bill of lading terms and conditions provided that "[a]s a condition precedent to recovery, a claim for any loss or damage, injury or delay, must be filed in writing ... within nine (9) months after a reasonable time for delivery has elapsed.... Where a claim is not filed ... thereon in accordance with the foregoing provisions, carrier shall not be liable and such a claim will not be paid." Item 19(K) of Mayflower's applicable published tariff, ICC AERM 401–B, contains identical language.

On August 22, 1995, Delphax sent Mayflower a letter that read in relevant part as follows:

As noted in the attached Bill of Lading # 1722760, the Presidax IF 850 was received in damaged condition on July 5, 1995. Delphax is presently preparing a detailed cost estimate related to the damaged system and has filed an insurance claim with Delphax' insurance carrier. The current rough estimate is that the damage will be in the $40,000 to $50,000 range.

Paul Richard, or his representative from Chubb Insurance may be calling you to get additional information. I would appreciate your providing any data requested in a timely fashion.

On November 3, 1995, Delphax sent Mayflower another letter, which read in relevant part as follows:

Our File reflects that we conferred with you per date of October 11, 1995 regarding your handling of the above captioned shipment. As recalled, you addressed to [sic] information provided by your pickup driver, Mr. Kreidamaker, which you were going to verify with him and also provide a written statement from Mr. Kreidamaker detailing the circumstances surrounding this pick up and his observations at the time.

We have not received same and ask that if you have not already acquired the statement from Mr. Kreidamaker, you do so immediately, forwarding same for our review.

These two letters constitute the only written correspondence from Delphax to Mayflower during the nine month period following the delivery of the printer.

On June 3, 1996, nearly eleven months after the delivery of the printer, the Chubb group sent a letter to Mayflower that read in relevant part as follows.

Our investigation has revealed that you are responsible for the damages to our insured's property which occurred on the date shown above [6/28/95]. We have paid our insured $29,670.00 under his insurance contract with us and are now looking to you for reimbursement of these damages under our rights of subrogation.

Mayflower responded three times to the Chubb group. In its first letter, written on June 20, 1996, by Tammy Forbush ("Forbush"), a member of Mayflower's claims department, Mayflower denied the claim as being outside the nine month period for filing claims. Then, on August 16, 1996, Forbush wrote Chubb again and said: "Due to the fact that our Mayflower Agency was contacted prior to the 9 month filing period, we will be accepting this claim for review." Then, on October 30, 1997, Timothy Baer, Esquire, of TransProtection Service Company, Mayflower's claim service agent, wrote that Mayflower would not pay Delphax's claim because of Delphax's failure to have filed a timely written claim within nine months from the date of delivery.

A suit was brought in Middlesex Superior Court and removed to this Court on January 20, 1998. Both sides now move for summary judgment.

## II. *SUMMARY JUDGMENT STANDARD*

A motion for summary judgment will be granted only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). *Hinchey v. NYNEX*, 144 F.3d 134, 140 (1st Cir.1998). The facts must be viewed "in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Borschow Hospital & Medical Supplies, Inc. v. Cesar Castillo Inc.*, 96 F.3d 10, 14 (1st Cir.1996).

## III. *ANALYSIS*

### A. *Delphax Did Not File a Timely Claim*

The law governing whether and the extent to which Mayflower may be liable to Delphax is the Carmack Amendment to the former Interstate Commerce Act, 49 U.S.C. § 11707 (now 49 U.S.C. § 14706), interpreted by the Interstate Commerce Commission ("ICC") regulations 49 C.F.R. § 1005, *et seq.* (now 49 C.F.R. § 370, *et seq.*). Title 49 U.S.C. § 14706(e)(1) sets a minimum of nine (9) months that carriers must provide shippers for filing a claim. ICC regulation 49 C.F.R. § 370.3(b) sets minimum filing requirements for claims:

A written or electronic communication (when agreed to by the carrier and shipper or receiver involved) from a claimant, filed with a proper carrier within the time limits specified in the bill of lading or contract of carriage or transportation and:

(1) Containing facts sufficient to identify the baggage or shipment (or shipments) of property,

(2) Asserting liability for alleged loss, damage, injury, or delay, and

(3) Making claim for the payment of a specified or determinable amount of money, shall be considered as sufficient compliance with the provisions for filing claims embraced in the bill of lading or other contract of carriage.

49 C.F.R. § 370.3(b). Essentially the same language is also incorporated in Mayflower's published tariff provisions.

The regulations go on to describe documents which do not constitute claims:

Bad order reports, appraisal reports of damage, notifications of shortage or damage, or both, on freight bills, delivery receipts, or other documents, or inspection reports issued by carriers or their inspection agencies, whether the extent of loss or damage is indicated in dollars and cents or otherwise, shall, standing alone, not be considered by carriers as sufficient to comply with the minimum claim filing requirements specified in paragraph (b) of this section.

49 C.F.R. § 370.3(c)

The nine month period for filing claims laid out in Mayflower's bill of lading fits within the limits of the Carmack Amendment. Indeed, this nine month limit has been generally adopted by carriers in section 2(b) of what is known as the Uniform Straight Bill of Lading. *See Intech, Inc. v. Consolidated Freightways, Inc.*, 836 F.2d 672 (1st Cir.1987).

To determine whether Delphax properly made a claim within the nine month limit, it is proper to look to the ICC regulations. As the First Circuit said in *Nedlloyd Lines, B.V. Corp. v. Harris Transport Co., Inc.*, 922 F.2d 905 (1st Cir.1991):

Having thus required a carrier to take certain actions once a claim is received, we think it is neither inappropriate nor beyond the authority of the ICC at the same time to provide a carrier with some guidance as to what constitutes a

claim so that a carrier may know one when it sees one.

922 F.2d at 908 (quoting *Pathway Bellows, Inc. v. Blanchette,* 630 F.2d 900, 904 (2d Cir.1980)).

■ There were only two written communications sent by Delphax to Mayflower in the nine months subsequent to the delivery of the printer. Neither one constitutes a proper claim asserting liability for alleged damage.

The letter dated August 22, 1995, indicated clearly that the printer was damaged, but it did not indicate that Delphax was holding Mayflower liable for the damage. It put Mayflower on notice only that it might be asked to provide information to the Chubb Insurance Company. The letter dated November 3, 1995, did no more to assert a claim for liability. It was merely a follow up letter seeking information concerning the driver's observations at the time he picked up the printer. If anything, this letter indicates that Delphax and its agents were looking into the possibility that the printer was damaged before Mayflower picked it up. It would be completely unreasonable to read this communication as an assertion of liability.

Delphax argues that the August 22 letter was an assertion of liability because it refers, in its first line, to the bill of lading, and states that the shipment was received in damaged condition. Under the bill of lading, Mayflower is responsible for damage caused to Delphax property during shipment. The letter, Delphax maintains, clearly asserts liability on the part of Mayflower.

This argument is clearly flawed. It fails to address the fact that the letter is consistent ·with the possibility that the damage was caused before the shipment. The letter is really nothing more than a report of damage. Such a notification does not assert, by itself, liability. *See* 49 C.F.R. § 370.3(c).

## B. *Delphax Did Not State A Specific Sum of Money Due*

■ The two letters sent by Delphax within nine months of delivery not only failed to assert a claim of liability, but they also failed to make a claim for the payment of a specified or determinable amount of money, contrary to the requirements in Mayflower's bill of lading, published tariff and ICC regulation, 49 C.F.R. § 370.3(b)(3). In particular, Delphax's offering a "rough estimate . . . that the damage will be in the $40,000 to $50,000 range" fails to make a claim for the payment of a specified or determinable amount.

In *Bobst Div. Bobst Champlain, Inc. v. IML–Freight, Inc.,* 566 F.Supp. 665, 667–668 (S.D.N.Y.1983), the claim stated that "[t]he estimated amount of damage is approximately $100,000." The court found that this was not a specified or determinable amount. The court held that "determinable" means "an amount determinable, as a matter of mathematics, from a perusal of the documents submitted in support of the notice of claim." *Id.* at 669. In support of this claim, the court cited 49 C.F.R. § 1005.2(d) (now § 370.3(d)), which concerns claims for uncertain amounts, and reads as follows:

> Whenever a claim is presented against a proper carrier for an uncertain amount, such as '$100 more or less,' the carrier against whom such claim is filed . . . shall not . . . voluntarily pay a claim under such circumstances unless and until a formal claim in writing for a specified and determinable amount of money shall have been filed in accordance with the provisions of paragraph (b) of this section.

49 C.F.R. § 370.3(d).

Plainly, approximations of the amount owed do not meet the requirement of "a specified and determinable amount" as used in the ICC regulations. And plainly, an estimated range of $40,000 to $50,000, as stated in the August 22, 1995, letter, is just an approximation of what is owed, not a specified and determinable amount.

Delphax argues that it did not need to specify the amount at the time of the initial letter. Citing *Camar Corp. v. Preston Trucking, Inc.*, 1997 WL 345791 at * 3 (D.Mass. June 20, 1997), it argues that it would not be bound in a law suit by its initial claim of liability, and that it therefore cannot be barred from making a lawsuit because it stated its original claim in a range which proved to be *higher* than its ultimate claim for damages.

But Delphax neglects the clear statement of law in *Nedlloyd*:

[B]ecause Nedlloyd's notice of claim failed to specify an amount, Harris could not have voluntarily paid the claim, even if it had been inclined to do so. Permitting an inadequate claim to toll the statute of limitations for the filing of suit would frustrate the regulatory purpose of encouraging voluntary settlement by allowing a shipper to bring an action against a carrier without first providing the carrier the opportunity to pay voluntarily a properly notified claim.

922 F.2d at 908.

The same reasoning applies in this case. Because Delphax presented only a damage estimate range, Mayflower was barred by 49 C.F.R. § 370.3(d) from voluntarily settling the matter. Before the claim could be paid, it was incumbent upon Delphax to state a specified and determinable amount for the damages. Permitting an inadequate claim to toll the period in which a proper claim must be made would frustrate the regulatory purpose of encouraging voluntary settlement. The right to amend a complaint to reflect a different claim for damages is wholly separate from the right to bring a suit when a claim sufficient to allow settlement was not made in a timely fashion.

### C. *Estoppel*

■ Delphax argues that even if it did not state a claim with a specified and determinable amount in a timely fashion, Mayflower is estopped from denying the claim. The First Circuit has recognized "two situations in which the failure to file a completed claim within the specified time limit might be excused":

First, failure to file a timely claim might be excused if the shipper was unable, despite the exercise of reasonable diligence, to ascertain the extent of its loss within the claim filing period.... A second exception may apply where conduct on the part of the carrier misled the shipper into believing that the filing of a timely written claim was unnecessary.

*Nedlloyd*, 922 at 909.

Delphax claims to benefit from both exceptions. With regard to the failure to state a specified and determinable amount until the June 3, 1996 letter, Delphax claims that "its insurance company, and its claims adjuster diligently investigated the claims and was [sic] in to [sic] process of preparing a detailed estimate of damage caused to its property during shipment."

This argument, if fleshed out, might be enough to avoid summary judgment on the failure to claim a specified and determinable amount of damages within nine months of delivery. However, it cannot help with the failure to assert a claim of liability at all in that same time frame. With regard to that failure, Delphax looks to Forbush's letter, which indicated that Mayflower would accept Delphax's claim for review. Delphax cites this for the proposition "that Mayflower, by its conduct, misled Delphax into believing that it had indeed filed a proper claim, and that voluntary settlement was possible."

Forbush's letter, dated June 20, 1996, cannot possibly provide Delphax with the excuse it seeks. Such misleading behavior, if it happened, would be relevant only if it happened *before* the time period for filing a written claim had expired. There is no way a letter from Mayflower, more than two months *after* the time period for filing a claim had expired, could mislead Delphax in such a way as to *cause* it not to file a timely claim. Thus, this letter can provide no ground for estoppel.

## IV. CONCLUSION

Because Delphax failed to file a timely claim asserting liability for specified and determinate damages against Mayflower, and because there is no ground for excusing this failure, Mayflower's Motion for Summary Judgment dismissing the Second Amended Complaint (docket # 23) is **GRANTED.** Delphax's Cross–Motion for Summary Judgment (docket # 27) is **DENIED.**

**SO ORDERED.**