**Laurence CHERKIS, Plaintiff,**

v.

**ATLAS VAN LINES, INC., Defendant.**

**No. CIV A 98–30242–KPN.**

United States District Court,
D. Massachusetts.

July 28, 1999.

---

Michelle K. Manners, James R. Loughman, Donovan & O'Connor, Adams, MA, for Laurence Cherkis, Plaintiff.

Wesley S. Chused, Looney & Grossman, Elizabeth M. Adler, Looney & Grossman LLP, Boston, MA, for Atlas Van Lines, Inc., Collins Brothers Moving Corporation, Defendant.

## MEMORANDUM REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Docket No. 20)

NEIMAN, United States Magistrate Judge.

Laurence Cherkis ("Plaintiff") seeks redress for damage to a sculpture allegedly destroyed while being transported by Atlas Van Lines, Inc. ("Defendant"). In a motion for summary judgment, Defendant asserts that Plaintiff's claim is barred because he did not meet the nine month time limit set forth in Defendant's bill of lading within which a claim must to be filed.

With the parties' consent, the case has been assigned to the court pursuant to 28 U.S.C. § 636(c) for all purposes, including trial and entry of judgment. For the reasons which follow, the court will allow Defendant's motion for summary judgment.

### I. STANDARD OF REVIEW

Summary judgment is appropriate where the record reveals no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The facts must be viewed in a light most favorable to the non-moving party. Conward v. Cambridge Sch. Comm., 171 F.3d 12, 18 (1st Cir.1999). Still, the non-moving party bears the burden of placing at least one material fact into dispute after the moving party claims the absence of any such dispute. Mendes v. Medtronic, Inc., 18 F.3d 13, 15 (1st Cir.1994) (discussing Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). The factual dispute claimed by the non-moving party must be "material" and the dispute over it "genuine." A "genuine" issue is one that only a finder of fact can properly resolve because it may reasonably be resolved in favor of either party and a "material" issue is one that affects the outcome of the suit. Aponte Matos v. Toledo Davila, 135 F.3d 182, 186 (1st Cir.1998); Collins v. Martella, 17 F.3d 1, 3 n. 3 (1st Cir.1994) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Mere allegations or conjecture unsupported in the record are insufficient to raise a genuine issue of material fact. Tardie v. Rehab. Hosp. of Rhode Island, 168 F.3d 538, 541 (1st Cir. 1999). Absent a genuine dispute of material fact, questions of law are appropriate for resolution on summary judgment. Jimenez v. Peninsular & Oriental Steam Nav. Co., 974 F.2d 221, 223 (1st Cir.1992).

### II. FACTUAL BACKGROUND

In May of 1997, Plaintiff made arrangements for Defendant, through its agent, Collins Brothers Moving Corporation, to transport his household goods from Harrison, New York, to Williamstown, Massachusetts. (Cherkis Aff. (Docket No. 26) ¶ 4.) In late June of 1997, Defendant packed the goods, including the sculpture at issue. (Id. ¶ 5.) The majority of the goods, including the sculpture, were delivered to a warehouse in Williamstown on July 3, 1997. At the same time, the remainder of the goods were delivered to Plaintiff's interim rental home. (Id. ¶ 7.)

On January 23, 1998, Plaintiff and his family moved into their new home as planned. That same day, the goods from both the warehouse and the rental home

were delivered to Plaintiff's new home by Connors Brothers, the company that runs the warehouse where the goods were stored. Most of the goods were unloaded into, and stored in, what was formerly used as a seven car garage, (id.¶9), and Plaintiff proceeded to unpack the more necessitous items first. Plaintiff did not unpack the sculpture until February 25, 1998. (Id.¶11(b).) It was then that he became aware that the sculpture was "smashed." (Id.¶10.) However, Defendant was not notified of the condition of the sculpture until May 11, 1998, when it received Plaintiff's letter dated April 7, 1998. (Id.¶14.) Plaintiff's delay in notifying Defendant is at the heart of the issue now before the court.

After Plaintiff became aware of the condition of the sculpture in February, he asked his wife to obtain an appraisal. (Id ¶12.) Apparently, he and his wife, Jean Benjamin, were under the impression that only the artist who created the sculpture could appraise it. (Id.¶13.) Ms. Benjamin began making "repeated phone calls during the last week of February and early March of 1998 to the Holsten Galleries." (Benjamin Aff. (Docket No. 27) ¶8.) Holsten Galleries originally sold the sculpture to Plaintiff and Ms. Benjamin. It was not until mid-April that Ms. Benjamin spoke with someone at Holsten Galleries and learned the name of the artist. (Id.¶¶9–10.) The individual with whom she spoke was unable to provide the artist's street address or telephone number. (Id. ¶10.)

After obtaining the artist's telephone number from directory assistance, Ms. Benjamin attempted to contact the artist on several occasions. (Id.¶¶11–12.) In early May, the artist, a Mr. Garber, returned one of the telephone calls, but stated that he either "would not or could not" help in appraising the sculpture. (Id.¶13.) Ms. Benjamin thereupon contacted Holsten Galleries again and was instructed to send before and after photographs of the sculpture. (Id.¶¶14, 16.) She mailed the photographs in mid-May and received an appraisal of $12,000 on July 22, 1998. (Id. ¶18.)

## III. DISCUSSION

In its motion for summary judgment, Defendant maintains that Plaintiff's claim comes too late. In response, Plaintiff concedes that, pursuant to the Carmack Amendment to the Interstate Commerce Commission Termination Act of 1995, 49 U.S.C. § 14706 ("Carmack Amendment"), carriers like Defendant may contractually limit the time within which shippers may file damage claims, so long as the limit is not less than nine months. Plaintiff also concedes that the nine month period expired on April 3, 1998, and admits that he did not provide any notice of claim by that date. (Cherkis Aff. ¶14.) In fact, the notice of claim was not received by Defendant until May 11, 1998, by way of the letter dated April 7, 1998.(Id.) Plaintiff avers, however, that, given all the circumstances, there exists genuine disputes of material fact with respect to whether his untimeliness should be excused, thereby precluding summary judgment.

## A.

As a preliminary matter, the court notes that Plaintiff offers no explanation why it would have taken over one month for his letter of April 7, 1998, to reach Defendant. Although the letter appears to have been sent by certified mail, return receipt requested, (see Cherkis Aff. at Exh. B), Plaintiff has not provided a copy of the receipt to the court. (Compare Cherkis Aff. at Exh. C (May 26, 1998 letter from Plaintiff to Defendant, for which a receipt has been provided).) Nevertheless, the explanation reveals itself from documents and affidavits which Plaintiff himself provides.

In his letter of April 7, 1998, Plaintiff states that he did not provide earlier notification to Defendant because, in order to obtain a valuation of the sculpture, he and his wife had been attempting to locate the artist. (Cherkis Aff. at Exh. B.) Plaintiff

goes on to explain that he had finally "reached the artist" and, therefore, felt ready to contact Defendant. (Id.) However, Ms. Benjamin, in her affidavit, states that it was not until mid-April that she learned the name of the artist and that she did not actually speak with him until early May. (Benjamin Aff. ¶¶ 9–11.) Thus, it would have been impossible for Plaintiff to have "reached the artist" at the time the April 7, 1998 letter was supposedly dated. Again, as Plaintiff acknowledges, it was Ms. Benjamin who had undertaken the task of obtaining a value for the sculpture. In sum, it is more likely that the letter was actually composed and mailed in early May, not on April 7, 1998, and received by Defendant, as averred, on May 11, 1998.

In any case, as mentioned, Plaintiff admits that the letter dated April 7, 1998, was neither sent nor received by April 3, 1998, the date on which the nine month notification period expired. It was not until July 22, 1998, that Plaintiff actually obtained an appraisal of the sculpture. That appraisal, however, was not forwarded to Defendant until this action was commenced because, in Plaintiff's words, Defendant "had already denied my claim outright and had failed to respond to my letter of May 26, 1998, [and] I did not believe that doing so would serve any purpose." (Cherkis Aff. ¶ 20.)

### B.

Prior to oral argument, both parties expended significant effort in their written arguments to the court addressing the adequacy, as distinct from the timing, of the April 7, 1998 letter. The parties jointly deemed the April 7, 1998 letter to be a notice of claim. Both parties agreed that, in order to be adequate, a shipper's notice of claim to a carrier under the Carmack Amendment must include a specific or ascertainable amount of damages. *See* 49 C.F.R. § 1005.2. *See also Intech, Inc. v. Consolidated Freightways, Inc.*, 836 F.2d 672 (1st Cir.1987). In its brief, however, Defendant argued that Plaintiff's notice lacked the necessary specificity and that summary judgment was therefore in order.

Interestingly enough, Plaintiff conceded in response that his claim letter lacked a specific and ascertainable amount. Indeed, Plaintiff's ensuing argument was dependent on this concession. In essence, Plaintiff argued, the lack of specificity should be excused because, despite reasonable diligence, he was unable to obtain an appraisal of the sculpture within the allotted time period.

Defendant altered its position somewhat at oral argument. When the court observed that Plaintiff's letter of April 7, 1998, conveyed Plaintiff's belief "that the value of the piece will be not less than $10,000," Defendant's counsel conceded that such a claim would probably pass muster under the specificity requirements of the Carmack Amendment. *Compare Delphax Sys., Inc. v. Mayflower Transit, Inc.*, 54 F.Supp.2d 60, 64 (D.Mass. 1999) (shipper's "offering a 'rough estimate ... that the damage will be in the $40,000 to $50,000 range' fails to make a claim for the payment of a specified or determinable amount.") Still, Defendant argued, Plaintiff's letter was too late as a matter of law to preserve his claims. Plaintiff, on the other hand, maintained his previous position at oral argument. Assuming that the letter of April 7, 1998, lacked sufficient specificity, Plaintiff argued, the letter's lack of specificity as well as its lateness were both excusable.

### C.

There is no question that the Carmack Amendment requires a shipper to file a notice of a claim with a carrier within the given time period allotted by the carrier so long as that time period is no less than nine months. *Intech, Inc.*, 836 F.2d at 672. If notice is not provided within the period set by the carrier, a shipper's claim may be barred as a matter of law.

 Defendant's arguments to the contrary, a body of case law has developed

which makes clear that the Carmack Amendment also anticipated the possibility that a shipper's lack of proper and timely notice may be excused under certain circumstances. One circumstance in which the lack of specificity may be excused, applicable here, is when the shipper, despite "reasonable diligence," has been unable to ascertain the extent of its loss. *Nedlloyd Lines, B.V. Corp. v. Harris Transp. Co., Inc.*, 922 F.2d 905, 908–09 (1st Cir.1991); *Intech, Inc.*, 836 F.2d at 676–77; *Pathway Bellows, Inc. v. Blanchette*, 630 F.2d 900, 903–04 (2d Cir.1980). In its simplest form, this "reasonable diligence" standard requires a shipper to take all appropriate steps under the circumstances to obtain an actual or determinable value of a potential claim. *Nedlloyd Lines*, 922 F.2d at 908.

The reasonable diligence standard was first suggested by the Second Circuit in *Pathway Bellows*. There, the court granted the carrier-defendant's motion for summary judgment even though the shipper-plaintiff's notice to the carrier was only one day late. The court explained: "although it may appear Draconian to require that [the shipper] lose a $40,000 recovery because its claim letter was received one day late, [the shipper] has identified no *special circumstances* that would entitle it to be relieved of the admittedly severe consequences of its own procrastination." *Pathway Bellows*, 630 F.2d at 904 (emphasis added). More particularly, the court explained in footnote 10, "[i]f [the shipper] could not, in the exercise of reasonable diligence, have ascertained the extent of its loss within the nine month claim filing period, untimely filing of a completed claim might be viewed as excusable." *Id.* at 905 n. 10. (citing Ex Parte No. 263: *Rules, Regulations and Practices of Regulated Carriers with Respect to the Processing of Loss and Damage Claims*, 340 I.C.C. 515, 545–55 (1972)).

Subsequent to the decision in *Pathway Bellows*, the First Circuit dealt with the issue as well. In *Intech*, the court granted the defendant-carrier's motion for summary judgment where the defendant argued, much like here, that the plaintiff-shipper's claim was time-barred due to lack of proper notice. The plaintiff had argued that the defendant deliberately interfered with the claim by creating a dispute regarding the loading of the cargo at issue. *Intech*, 836 F.2d at 676–77. The court found no evidence, however, that the plaintiff had actually relied upon these alleged acts of interference by the defendant. *Id.* at 677. Citing *Pathway Bellows'* footnote 10, the court concluded that the plaintiff, which left the delivered package unopened on its property for approximately six months, had "sufficient time to inspect the container, discover any damage, and file a claim." *Id. See also Nedlloyd Lines*, 922 F.2d at 908 (brief discussion of *Pathway Bellows'* footnote 10).

In this regard, the court rejects Defendant's argument, in reliance on *Bobst Div. of Bobst Champlain, Inc. v. IML–Freight, Inc.*, 566 F.Supp. 665, 672 (S.D.N.Y.1983), that a more stringent standard should apply when measuring a shipper's efforts to ascertain an amount certain for its claim, namely, that to be excused, the shipper must prove that "circumstances rendered a filing within nine months 'impossible.'" The court does not find this quoted language to be at odds with the "reasonable diligence" standard. The *Bobst* court appears to have used the phrase "reasonable diligence" and the term "impossible" interchangeably. In essence, the court asked whether it was impossible for the shipper, through reasonable diligence, to ascertain the required information. This is the very import of Ex Parte No. 263, the ruling of the Interstate Commerce Commission cited in *Pathway Bellows* as well:

Unquestionably, if the contract of carriage dictates (as is required by section 2 of the uniform domestic straight bill of lading) that a claim be filed within 9 months, then it certainly behooves a claimant to file within that time because otherwise his claim may be barred. On

the other hand, there are times when it is impossible for a claimant to determine accurately the amount that should be claimed. The purpose of a reasonable limitations period is to enable a carrier to investigate the factual situation giving rise to a claim while recollections are still possible and records continue to be available. The actual amount of the claim is not essential immediately and, while it should ordinarily be included in the claim, inclusion of the amount claimed is directory rather than absolute. Such amount should, of course, be made known to the carrier as soon as it becomes available in those instances where a claim has earlier been filed.

*Bobst,* 566 F.Supp. at 670 (citing Ex Parte No. 263).

### D.

In the instant matter, Plaintiff suggests that a jury could infer that, acting with reasonable diligence, he could not have provided the required notice to Defendant within the nine month period established in the bill of lading. In particular, Plaintiff asserts, it would have been unreasonable for him to inspect all of the stored boxes at the warehouse during the period he was in a rental home. Perhaps that is true. *Cf. Delphax,* 54 F.Supp.2d at 65 (shipper's argument that its insurance company had diligently investigated the claim and was preparing a detailed damage estimate, "if fleshed out, might be enough to avoid summary judgment on the failure to claim a specified and determinable amount of damages within nine months of delivery."). Yet that same reasoning neither excuses Plaintiff's one month delay in opening the package once it was delivered to his new home, nor his failure to obtain an appraisal prior to April 3, 1998. As described, Plaintiff did not obtain an appraisal of the sculpture for more than six months after becoming aware of the damage, for more than seven months after the sculpture was delivered to his new home, and for more than one year after the sculpture was delivered to a warehouse at Plaintiff's direction.

Other courts have held that shippers failed to meet the reasonable diligence requirement in analogous fact situations. In *Bobst,* for example, the shipper allowed three months to transpire before it sent the damaged items for repair and, thereafter, allowed several weeks to pass without expending its best efforts to obtain an appraisal. *Bobst,* 566 F.Supp. at 667. Likewise, the court in *Intech* held that a six month period of procrastination before the shipper opened the package delivered by the carrier precluded its claim. As the First Circuit explained, shippers must provide adequate and timely notice of a potential claim to carriers so that they can initiate an investigation before records are lost or destroyed and the shipping process becomes a distant memory. *See Intech, Inc.,* 836 F.2d at 675. Leisurely approaches and periods of procrastination are inconsistent with both the legislative goal of the Carmack Amendment and the standards applied by the courts. A shipper's procrastination in opening a package, once delivered, fails to meet the *Pathway Bellows'* "reasonable diligence" standard as a matter of law. *Id.* at 677.[1]

Plaintiff's failure to obtain an appraisal, however, is only one part of the equation. Even were the court to enable Plaintiff to avoid summary judgment on this ground, Plaintiff's problem is more fundamental. The "special circumstances" suggested in *Pathway Bellows* concern the untimely filing of a *"completed* claim." *Pathway Bellows,* 630 F.2d at 905 n. 10 (emphasis added). A fair implication is that a shipper must at least put the carrier on timely notice of a potential claim, when known, in order to seek to excuse its inability to provide a specific amount for that claim.

---

1. A more diligent inquiry by Plaintiff may have revealed that Holsten Galleries itself, first contacted by Plaintiff in late March, could appraise the sculpture, rather than merely serve as a conduit to the artist. It was the gallery, after all, that originally sold the sculpture to Plaintiff and which later provided the appraisal upon which Plaintiff now relies.

Here, Plaintiff provided no notice whatsoever to Defendant within the applicable time period and proffers no adequate excuse for that failure.

In the court's view, a shipper must not only attempt to ascertain the required information for making a completed claim, but must be active in its dealings with the carrier. The court believes that, depending on the facts in each case, the "reasonable diligence" standard applies to all aspects of a shipper's claim, including whether the shipper provided the carrier with some notice upon discovery of a potential claim. Thus, if untimely notice is to be excused, a shipper must act with reasonable diligence not only in ascertaining a quantifiable amount of damage, but in notifying the carrier of the potential claim. It would be unfair to allow a shipper to be relieved of all other requirements attendant to making a timely claim, once discovered, merely to allow it to ascertain a sum certain for that claim.

In sum, Plaintiff's "factual" assertions here are too weak to reach the "more than a mere scintilla" standard the court must employ when reviewing summary judgment claims against the party bearing the burden of proof at trial. *Milton v. Van Dorn Co.*, 961 F.2d 965, 969 (1st Cir.1992). "Mere allegations, or conjecture unsupported in the record, are insufficient to raise a genuine issue of material fact." *Horta v. Sullivan*, 4 F.3d 2, 8 (1st Cir. 1993) (quoting *August v. Offices Unlimited, Inc.*, 981 F.2d 576, 580 (1st Cir.1992)). Once a defendant, in support of its summary judgment motion, demonstrates that no genuine issue of material fact exists, a plaintiff can only contradict that showing by pointing to *specific facts* demonstrating that there is, indeed, a trialworthy issue. *See National Amusements, Inc. v. Town of Dedham*, 43 F.3d 731, 735 (1st Cir.1995). Plaintiff has not borne that burden here.

Plaintiff's arguments to the contrary, it is by no means uncommon for courts to decide that a shipper has not acted with "reasonable diligence" as a matter of law. *See Nedlloyd Lines*, 922 F.2d at 908–09

(carrier's motion for summary judgment granted due to the lack of a specified amount in shipper's notice); *Pathway Bellows*, 630 F.2d at 905 (summary judgment granted given insufficient initial notice and late filing of claim); *Bobst Div. of Bobst Champlain, Inc.*, 566 F.Supp. at 665–66 (carrier's motion to dismiss granted based on insufficient initial notice for which the shipper could not provide an adequate excuse). Here, Plaintiff's complete lack of communication with Defendant prior to the expiration of the notice period cannot be viewed as falling within court drawn parameters of reasonable diligence.

■ Given the undisputed facts, no reasonable jury could find that Plaintiff acted with reasonable diligence and that his untimeliness should be excused. The facts show that, on February 25, 1998, Plaintiff was aware that the sculpture was destroyed and that he did not provide notice of claim until after the notice period expired on April 3, 1998. The April 7, 1998 notice of claim contained no information that Plaintiff could not have provided to Defendant immediately upon his discovery of the sculpture's condition on February 25, 1998, well within the nine month notice period, including the fact that the sculpture was worth "at least $10,000." As Defendant's counsel recognized, that assertion would have been sufficiently specific for the carrier to address the claim. Yet Plaintiff offers no adequate explanation as to why he did not send his April 7, 1998, letter as soon as the damage was discovered. Stated simply, Plaintiff's failure to provide such information or to otherwise place Defendant on notice of his claim in a timely manner is, in a word, inexcusable as a matter of law.

## IV. CONCLUSION

For the reasons stated, the court will allow Defendant's motion for summary judgment. A separate order shall issue.