NORPIN MANUFACTURING
CO., INC., Plaintiff,

v.

CTS CON–WAY TRANSPORTATION
SERVICES, INC., et al.,
Defendants.

No. CIV.A. 98–30040–MAP.

United States District Court,
D. Massachusetts.

Sept. 21, 1999.

Robert J. Gallagher, Haydenville, MA, for Norpin Manufacturing Co., Inc., Plaintiff.

Wesley S. Chused, Looney & Grossman, Boston, MA, for CTS Con–Way Transportation Services, Inc., Atlas Motors, Inc., Defendants.

*MEMORANDUM AND ORDER REGARDING OBJECTIONS TO REPORT AND RECOMMENDATION ON DEFENDANT CTS' MOTION FOR SUMMARY JUDGMENT*

(Docket No. 18)

PONSOR, District Judge.

On July 28, 1999, United States Magistrate Judge Kenneth P. Neiman issued his Report and Recommendation on the Motion for Summary Judgment of defendant CTS Con–Way Transportation Services, Inc. ("CTS"). In a detailed memorandum, Magistrate Judge Neiman advised that the Motion for Summary Judgment should be denied. Defendant has filed objections to the Report and Recommendation.

After careful *de novo* review, this court will adopt the Report and Recommendation and deny the Motion for Summary Judgment.

The scrupulousness of the Report and Recommendation makes extended discussion unnecessary. In summary, for the reasons stated by Magistrate Judge Neiman, this court has concluded that defendant's argument that plaintiff was bound by a nine-month limitation period constitutes an over-aggressive interpretation of the applicable law. The bill of lading under which the airplane engine moved did not incorporate by reference the terms and conditions of the uniform straight bill of lading, and the plaintiff was not held to constructive knowledge of the nine-month deadline.

Moreover, even if the nine-month cut-off applied, disputed issues of fact bar the court from concluding as a matter of law that Norpin was not excused from the deadline. Finally, once again, disputed issues of fact prohibit the court from concluding as a matter of law that the plaintiff cannot establish a *prima facie* case. This conclusion is especially compelling given the incomplete state of discovery.

For the forgoing reasons, defendant's Motion for Summary Judgment is hereby DENIED. This case is referred to Magistrate Judge Neiman for a status conference to address the issues of expert discovery and possible settlement. *See* Scheduling Order of November 19, 1998 (Docket No. 17) at ¶ 5.

It is So Ordered.

*REPORT AND RECOMMENDATION REGARDING DEFENDANT CTS CON–WAY TRANSPORTATION SERVICES' MOTION FOR SUMMARY JUDGMENT (Docket No. 18)*

NEIMAN, United States Magistrate Judge.

Norpin Manufacturing Company, Inc. ("Plaintiff"), seeks damages from CTS Con-way Transportation Services, Inc. ("Defendant"). Plaintiff claims that, in the course of shipping an airplane engine to Plaintiff, Defendant caused damage to the crankshaft flange. Plaintiff sets forth its claim in Count I pursuant to 49 U.S.C. § 14706, the Carmack Amendment to the Interstate Commerce Commission Termination Act ("ICCTA") of 1995 ("Carmack Amendment"). In Count II, Plaintiff claims that a second defendant, Atlas Motors, Inc., the company which sold Plaintiff the engine, breached a warranty of merchantability under M.G.L. ch. 106 § 2–314.

Count II is not at issue in the matter presently before the court.

Defendant has moved for summary judgment on Count I of the complaint, asserting that Plaintiff's damage claim was filed with Defendant too late as a matter of law. Defendant's motion has been referred to the court for a report and recommendation pursuant to Rule 3 of the Rules of United States Magistrates in the United States District Court for the District of Massachusetts. *See* 28 U.S.C. § 636(b)(1)(B). For the reasons which follow, the court will recommend that Defendant's motion be denied.

## I. STANDARD OF REVIEW

A court may grant summary judgment pursuant to Rule 56(c) if "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Once the moving party has asserted that no genuine issue of material fact exists, the burden is on the opposing party to point to specific facts demonstrating that there is, indeed, a trialworthy issue. *National Amusements, Inc. v. Town of Dedham*, 43 F.3d 731, 735 (1st Cir.1995). A "genuine" issue is one "that a reasonable jury could resolve ... in favor of the nonmoving party." *McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir.1995). Accord *United States v. One Parcel of Real Property, Great Harbor Neck, New Shoreham, R.I.*, 960 F.2d 200, 204 (1st Cir.1992).

Not every genuine factual conflict, however, necessitates a trial. " 'It is only when a disputed fact has the potential to change the outcome of the suit under the governing law if found favorably to the nonmovant that the materiality hurdle is cleared.' " *Parrilla–Burgos v. Hernandez–Rivera*, 108 F.3d 445, 448 (1st Cir. 1997) (quoting *Martinez v. Colon*, 54 F.3d 980, 983–84 (1st Cir.1995)).

## II. BACKGROUND

On May 8, 1996, Defendant picked up a crated aircraft engine at Dulles International Airport ("Dulles"), which engine was already in transit, in order to transport it to Plaintiff's facility in Ludlow, Massachusetts. At the time, Defendant did not affix its own bill of lading to the crate. Rather, it adopted the bill of lading affixed by Air Schott, the custom house broker which tendered the engine to Defendant at Dulles. To do so, Defendant simply affixed its own "pro sticker" to the Air Schott bill of lading. Defendant's driver signed the bill of lading and noted that the package was "Received in Good Order." Defendant delivered the crated engine to Plaintiff on May 10, 1996.

Upon delivery of the engine to Ludlow, Plaintiff's receiver noted on the bill of lading that the crate was "punctured" with "possible concealed damage." Plaintiff has since characterized the damaged crate as "cracked" and "broken." The location of the damage on the crate evidently coincided with the location of the crankshaft flange inside. Kenneth N. Pincince ("Pincince"), Plaintiff's general manager, immediately inspected the engine visually, but found no damage.

Soon thereafter, Plaintiff transported the engine to an aircraft facility in Syracuse, New York, for certain modifications. The engine was then returned to Ludlow and installed in an aircraft. The engine operated for about a year without any signs of damage. In approximately May of 1997, however, damage to the engine appeared. Pincince found a crack in the crankshaft and performed a dye test which revealed four cracks, including one which was apparent upon unaided visible inspection. The engine was deemed inoperative. Four days later, on June 19, 1997, Plaintiff filed a damage claim with Defendant for the cost of the engine. On June 23, 1997, Defendant came to inspect the engine. The next day, Defendant denied Plaintiff's claim citing as its reason that more than nine months had elapsed between delivery of the engine and the filing of the claim.

### III. *DISCUSSION*

In applicable part, the Carmack Amendment provides that:

A carrier may not provide by rule, contract or otherwise, a period of less than 9 months for filing a claim against it under this section and a period of less than 2 years for bringing a civil action against it under this section. The period for bringing a civil action is computed from the date the carrier gives a person written notice that the carrier has disallowed any part of the claim specified in the notice.

49 U.S.C. § 14706(e)(1). There is no dispute that if a shipper fails to file timely notice of a claim, at least as the law has been construed in this and the majority of circuits, a shipper is, with limited exceptions, barred from recovery. 49 C.F.R. § 370; *Nedlloyd Lines, B.V. Corp. v. Harris Transport Co. Inc.,* 922 F.2d 905, 907–08 (1st Cir.1991).

Defendant's central assertion in its motion for summary judgment is that Plaintiff failed to file a timely written claim as required by the Carmack Amendment. Several clusters of arguments form the basis of Defendant's motion and will be addressed in turn.

### A.

Defendant first asserts that Plaintiff's notice of a claim was untimely because it was filed more than nine months after delivery of the airplane engine. According to Defendant, the nine month period is derived from an industry standard bill of lading, generally known as the Uniform Straight Bill of Lading. *See Hughes Aircraft Co. v. North Amer. Van Lines, Inc.,* 970 F.2d 609, 613 (9th Cir.1992). For his part, Plaintiff does not contest the assertion that, under normal circumstances, a shipper must comply with the terms of a carrier's bill of lading, including the time limit for filing claims. Plaintiff maintains, however, that no such time limit was established here. Plaintiff also asserts that, as bills of lading are contracts of adhesion, their terms must be construed against the carrier. *See Chandler v. Aero Mayflower Transit Co.,* 374 F.2d 129, 135 (4th Cir. 1967).

As a preliminary matter, the court notes that, although Defendant characterizes the nine month time period referenced in the statute as an industry standard, the statute makes clear that nine months is a minimum and not necessarily a required time frame. Here, for the reasons which follow, the court believes that the nine month limitations period does not apply to the instant matter.

It is apparently undisputed that, when Defendant received the packaged engine from Air Schott, it adopted Air Schott's bill of lading as its contract of carriage, at least in form. By attaching its "pro sticker," Defendant asserts, the bill of lading then "incorporated by reference" the Uniform Straight Bill of Lading. The Uniform Straight Bill of Lading in turn incorporates by reference all of the provisions of the ICC NMF 100–V, rules applying to freight traffic governed by applicable tariffs.

The court sees no reason why it should read the bill of lading under which the shipment at issue moved as incorporating by reference the Uniform Straight Bill of Lading. The only evidence before the court is Defendant's driver's application of a pro sticker to the Air Schott bill of lading. (Riddle Aff. ¶¶ 6–7.) There is no nine month provision contained in that bill. (Appendix (Docket No. 24) at Exhibit A.) Nor is there any evidence that either the Uniform Straight Bill of Lading or the ICC NMF 100–V was explicitly incorporated therein by reference. At bottom, there is simply no reference to ICC NMF 100–V, the Uniform Straight Bill of Lading or any information regarding claims procedures in either Defendant's pro sticker or the Air Schott bill of lading.

The cases upon which Defendant relies for its assertion that the Uniform Straight Bill of Lading applies nonetheless do little

to bolster its claim. In most of these cases, the cargo was explicitly shipped under the Uniform Straight Bill of Lading. *See Intech, Inc. v. Consolidated Freightways, Inc.*, 836 F.2d 672, 673 (1st Cir.1987)(cargo shipped under the provisions of Uniform Straight Bill of Lading); *Culver v. Boat Transit, Inc.*, 782 F.2d 1467, 1468 (9th Cir.1986) (same). *Compare Insurance Co. of North Amer. v. Newtowne Manufacturing Co. Insurance Co. of North America*, 187 F.2d 675, 679 (1st Cir.1951). That is simply not the case in the matter now before the court. Accordingly, there can be no clear imputation of the nine month requirement which Defendant seeks to impose. On that basis alone, the court recommends summary judgment should be denied.

### B.

Defendant preservers, arguing that, even if Plaintiff was unaware of the nine month claim filing period, it *should* have been aware of such limitation; it is enough that Defendant had an ICC NMF 100–V tariff and Uniform Straight Bill of Lading available at its premises for Plaintiff's perusal. Accordingly, Defendant argues, the court should hold Plaintiff to constructive knowledge of the nine month limitation period as a matter of law.

■ The concept of constructive knowledge is founded in the historical fact that carriers had been required to file tariffs with the Interstate Commerce Commission ("ICC"). Filed tariffs were then held to have the force of law. *See Certain Underwriters at Lloyd's of London v. Indep. Freightway, Inc.*, 1993 WL 787522, at *2 (E.D.Cal.1993). Under this filed tariffs doctrine, shippers were held to notice of the claims-filing requirements set out in the tariffs. However, carriers such as Defendant were relieved of their obligation to file tariffs as of January 1, 1996, when the Surface Transit Board succeeded the ICC under the ICCTA. Now, they need only maintain tariffs at their own places of business.

Plaintiff argues that, because tariffs are no longer filed with a governmental body, they no longer have the force of law. In support, Plaintiff relies on two pre-ICCTA cases, *Fireman's Fund Ins. Cos. v. Barnes Elec., Inc.*, 540 F.Supp. 640, 644 (N.D.Ind. 1982), and *Quasar Co. v. Atchison, Topeka and Santa Fe Rwy. Co.*, 632 F.Supp. 1106 (N.D.Ill.1986). That reliance, in the court's view, is misplaced.

■ It appears to be the intent of the ICCTA, as revealed by its legislative history, to continue to hold shippers to constructive knowledge of tariffs under certain circumstances. As the House Conference report explained, "[t]he intention of this conference agreement is to replicate, as closely as possible, the practical situation which occurred prior to the enactment of the Trucking Industry Regulatory Reform Act of 1994 ("TIRRA")." House Conf. Rep. No. 104–422 at 223. The TIRRA had repealed the requirement that tariffs be filed with the ICC for individually determined rates. The House Conference Report continues:

> Prior to the enactment of TIRRA, carriers had the ability to limit liability as a part of the terms contained in the tariff. By signing a bill of lading which incorporated by reference the tariff, the shipper was deemed to have agreed to the tariff and its conditions and terms. However, the carrier was under no obligation to specifically notify the shipper of the conditions or terms of the tariff. It was the responsibility of the shipper to take an affirmative step to determine what was contained in the tariff—usually through the retaining of a tariff watching service. An unintended and unconsidered consequence of TIRRA was that, when the tariff filing requirement was repealed, carriers lost this particular avenue as a way of limiting liability.

*Id.* The Conference Report then explains that the ICCTA "is intended to return to the pre-TIRRA situation where shippers

were responsible for determining the conditions imposed on the transportation of a shipment." *Id.*

The legislative history suggests that Plaintiff's assertion—that a shipper can never be held to constructive knowledge based upon a tariff when that tariff is not filed with a governmental body—is not quite correct. The availability of the tariff at the carrier's office, where it must now be maintained, may suffice. However, as the legislative history also makes clear, a shipper has the affirmative duty to request the applicable tariff only if it were incorporated by reference into the bill of lading under which the cargo moved. *See* 49 U.S.C. §§ 13702(b)(1) and 13710(a)(1). Defendant's arguments to the contrary, that incorporation by reference simply did not occur here.

There is no meaningful dispute that the Air Schott bill of lading was "adopted" by adding a pro sticker. There was, however, no reference in either the pro sticker or the Air Schott bill of lading to the Uniform Straight Bill of Lading, of which Defendant proffers a blank copy only. (Riddle Aff. at Exhibit B.) Accordingly the Uniform Straight Bill of Lading had not been and cannot be deemed to have been incorporated by reference into the actual bill of lading used here. Plaintiff therefore cannot be held to have possessed constructive knowledge of any claims procedures or limitations therein. If a carrier fails to provide notice of its nine month period for filing a claim, a claimant ought not be barred from recovery for failing to adhere to the time limitation. *Perlow v. AAAcon Auto Trans., Inc.*, 280 Pa.Super. 52, 421 A.2d 399 (1980); *Batson Cook Co. v. Burlington Northern, Inc.*, 156 Ga.App. 850, 275 S.E.2d 733 (1980). Accordingly, Defendant's motion should be denied.

In making this recommendation, the court is not concerned with the parade of horrors which Defendant posits would arise should the claim at bar be allowed to go forward. As Defendant itself asserts, the Carmack Amendment circumscribes a carrier's discretion in determining the terms under which it ships cargo in only a few limited ways. In essence, Congress meant for a carrier to have a certain measure of repose. A carrier may set any time limitation it chooses by "rule, contract or otherwise," so long as it does not fall below the statutory requirements. 49 U.S.C. § 14706(e)(1). As described, Congress simply barred carriers from allowing less than nine months for a shipper to file a claim. *See Dress Barn, Inc. v. LTA Group, Inc.*, 822 F.Supp. 88, 90 (D.Conn. 1993). In a case such as this, however, where a carrier, who possessed the ability, failed to exercise its statutory or contractual rights, the court is not inclined, without more, to constructively impose a time limit.

### C.

Although the court recommends that the nine month limitations period should not apply in the instant matter and that, accordingly, Plaintiff's claim should not be barred as a matter of law, it nonetheless addresses whether Plaintiff's failure to file a claim within the nine months is excusable. The court undertakes this task in order to provide a thorough report and recommendation.

There is no dispute that Plaintiff filed its claim thirteen months after Defendant delivered the engine. Nevertheless, Plaintiff maintains it is excused from the nine month time frame, if applicable, as there was no way it could have known of the concealed or latent damage within that period of time. In fact, courts have held that if, given the exercise of reasonable diligence, a shipper could not have ascertained the amount of its claim within the time period specified by the carrier it may be excused from filing a timely claim. *See Nedlloyd Lines*, 922 F.2d at 909. *See also Pathway Bellows, Inc. v. Blanchette*, 630 F.2d 900, 905 n. 10 (2d Cir.1980); *Bobst Div. of Bobst Champlain, Inc. v. IML–Freight, Inc.*, 566

F.Supp. 665, 671 (S.D.N.Y.1983). This court itself has addressed the reasonable diligence standard in a memorandum and order issued this day. *See Cherkis v. Atlas Van Lines, Inc.,* 59 F.Supp.2d 203 (D.Mass.1999). In its simplest form, the standard requires a shipper to take all appropriate steps under the circumstances to obtain an actual or determinable value of a potential claim. *Nedlloyd Lines,* 922 F.2d at 908.

Defendant's arguments to the contrary, the court is not convinced that the exception to the timely filing requirement for a damage claim originally carved out in *Pathway Bellows,* and further articulated in this circuit in *Nedlloyd Lines,* applies only to a shipper being excused from ascertaining an amount certain of its claim. As the *Pathway Bellows* court explained, "[i]f a shipper could not, in the exercise of reasonable diligence, have ascertained the extent of its loss within the nine month claim filing period, untimely filing of a completed claim might be viewed as excusable." *Pathway Bellows,* 630 F.2d at 905 n. 10. If a shipper is unaware of a potential claim, it would naturally be unable to ascertain the extent of that claim.

 Granted, courts have not hesitated to find a shipper's excuse for failing to file a timely claim inadequate as a matter of law. The court made this very determination in *Cherkis.* Here, however, the court cannot recommend that, were the nine month limitation otherwise deemed applicable, Plaintiff ought not be excused from its terms as a matter of law. Whether the damage to the engine could have, or indeed should have, been detected at delivery, in the court's opinion, remains a dispute of fact.

Viewing the evidence in a light most favorable to Plaintiff, the non-movant, the court believes that a reasonable fact finder could infer that Plaintiff acted with due diligence in attempting to find and then quantify its claim. Plaintiff noted the damage to the fiberboard crate upon delivery of the engine. Within fifteen to thirty minutes a visual inspection was done by Pincince, an individual experienced with engines, and the damage location was correlated to the crankshaft flange. No damage was noted on the crankshaft, however. The engine was then used for a year without event, at which time problems with the crankshaft flange began to develop. Several cracks, including what are believed to be stress fractures, emerged in the crankshaft flange. Plaintiff attributes the damage to Defendant. At bottom, it may be reasonable for a jury to infer that Plaintiff simply could not have ascertained the amount of damage within a nine month period, despite the exercise of due diligence.

Defendant's argument that Plaintiff should have conducted magnaflux testing to ascertain the extent of the damage at the time the engine was delivered, which would have cost between $5,000 and $8,000, is simply part of the factual equation. Whether conducting such a contemporaneous test was part of Plaintiff's duty to exercise reasonable diligence is a question of fact best left to a jury. Accordingly, the court recommends that, even were the nine month claim filing period found to apply, summary judgment should still be denied.

### D.

The court addresses an alternative argument advanced by Plaintiff, namely that were the court to hold it to the nine months limitations period of the Uniform Straight Bill of Lading and ICC NMF 100–V, it must hold the parties to the other provisions of the tariff as well. Specifically among those provisions, Plaintiff states, is item number 300135 of the ICC NMF 100–V which applies to concealed damages:

> When damage to contents of a shipping container is discovered by the [shipper] which could not have been determined at time of delivery it must be reported by the [shipper] to the delivering carrier upon discovery and a request for inspec-

tion by the carrier's representative made.... if more than fifteen days pass between date of delivery of shipment by carrier and date of report of loss or damage, and request for inspection by [shipper] it is incumbent upon the shipper to offer reasonable evidence to the carrier's representative when inspection is made that loss or damage was not incurred by the consignee after delivery of shipment by carrier....

Plaintiff contends that 300135 requires a shipper to report previously concealed damage only upon its discovery. In contrast, Defendant avers that the provision imposes a distinct obligation coterminous with the nine month claim-filing requirement. The concealed damage portion does not, according to Defendant, supplant the nine month requirement.

■ Neither party cites any authority for their respective constructions of 300135. In the court's estimation, the provision appears to be intended to preserve the article in its delivered form in order to give a carrier an opportunity to assess the damage. Still, it does not appear to the court that 300105 categorically precludes the filing of a claim after nine months if it is only then that the damage is revealed.

Here, Defendant's driver indicated that he received the crate and, by implication, the engine in good condition at Dulles. When Defendant delivered the crate, Plaintiff specifically noted that the crate was damaged. As already described, the court believes that a fact finder could reasonably infer from the evidence that an adequate visual inspection was conducted at the time and that no damage was or could be detected. The later detected damage presumably could have occurred as a result of stress fractures which a jury could find were undetectable upon delivery. Whether the damage should have been detected by Plaintiff at delivery is a question for another day. For now, and for all of the foregoing reasons, the court cannot find that Plaintiff was bound to file

its claim within nine months as a matter of law.

## E.

■ As the final part of its motion for summary judgment, Defendant assails the sufficiency of Plaintiff's evidence. In this respect, Defendant cites the *prima facie* elements of a shipper's claim under the Carmack Amendment: (1) the shipment was received by the carrier at origin in good condition; (2) the shipment was delivered in damaged condition; and (3) the amount of damages. *Missouri Pac. Railroad Co. v. Elmore and Stahl*, 377 U.S. 134, 137, 84 S.Ct. 1142, 12 L.Ed.2d 194 (1964). Defendant challenges the evidence of record with regard to both the first and second prongs of Plaintiff's claim.

■ Defendant avers at the outset that Plaintiff does not provide sufficient evidence of the element of good origin condition at Dulles as a "bill of lading is not proof of the contents and condition of the shipment." *D.P. Apparel Corp. v. Roadway Express, Inc.* 736 F.2d 1, 4 (1st Cir.1984). Again, in the present matter, Defendant's driver, who picked up the crate at Dulles for transport to Plaintiff's facility in Ludlow, noted on the bill of lading that the crate was "received in good order." "The acknowledgment in a bill of lading that a shipment is in apparent good order is *prima facie* evidence of delivery in good condition" only when referring "to those parts open to inspection and visible." *Id.* "Where the contents of the shipment are not visible or open for inspection, additional direct and affirmative proof is necessary to show the [goods were] in good condition when delivered to [the shipper]." *Id.*

The court is not unpersuaded that more direct proof is likely needed to demonstrate Plaintiff's *prima facie* case with respect to good origin condition. However, the case upon which Defendant relies for its assertion, *D.P. Apparel Corp.*, was decided during a non-jury trial in response to a Rule 41(b) motion at the close of the

plaintiff's evidence. The court was thereby "empowered to weigh and evaluate plaintiff's evidence and to grant the dismissal if the evidence preponderates against the plaintiff." *Id.* at 3. Although the court there was unequivocal in its finding of insufficient evidence, we are simply not yet at that juncture in the present matter.

Defendant likewise challenges Plaintiff's contention that the engine was delivered in a damaged condition, the second *prima facie* element. A challenge to causation is at the core of Defendant's argument. In essence, Defendant maintains that Plaintiff has proffered no evidence that the cracks in the crankshaft flange discovered a year after delivery relate back to Defendant's transport of the engine.

Defendant's argument has some force. Given the apparent transport of the engine by another carrier prior to Defendant's acquisition of the crate at Dulles, the transport of the engine by Plaintiff itself after its delivery at Ludlow, and the use of the engine for one year prior to the discovery of the defect, Plaintiff may well have difficulty garnering sufficient evidence to prove the elements of its case. However, for the same reasons described above, the court believes it premature to make that factual determination at this time.

More fundamental to the court's recommendation in this regard is the fact that discovery is not yet complete. Granted, Plaintiff's papers advert to a Federal Aviation Administration mechanic it plans to use as an expert, presumably on both substantive issues raised by Defendant. However, pursuant to District Judge Michael A. Ponsor's scheduling order, the case is still in phased discovery, the expert phase not having yet commenced. (Docket No. 17.) Whether Plaintiff later can present a *prima facie* case as to all the prongs may well become an issue once expert discovery has been completed. For the moment, however, that issue is not fairly presented. Accordingly, the court maintains its view that summary judgment be denied.[1]

## IV. CONCLUSION

For the foregoing reasons, the court will recommend that Defendant's motion for summary judgment be denied.[2]

1. Defendant has moved to strike paragraph 22 of Pincince's affidavit as offering an unqualified expert opinion. (Docket No. 29.) As it is prior to expert discovery, the court cannot unequivocally say that Pincince is unqualified to render an expert opinion in this case. Moreover, nearly identical testimony was given by Pincince at his deposition, testimony which has been proffered here, not by Plaintiff, but by Defendant. (Docket No. 22.) In any event, the court has not relied on paragraph 22 in any way in rendering its report and recommendation. Accordingly, Defendant's motion to strike has been denied by margin notation this day.

2. The parties are advised that under the provisions of Rule 3(b) of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts, any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court within ten

(10) days of the party's receipt of this Report and Recommendation. The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection. The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation. *See Keating v. Secretary of Health & Human Services,* 848 F.2d 271, 275 (1st Cir.1988); *United States v. Valencia–Copete,* 792 F.2d 4, 6 (1st Cir.1986); *Scott v. Schweiker,* 702 F.2d 13, 14 (1st Cir.1983); *United States v. Vega,* 678 F.2d 376, 378–379 (1st Cir.1982); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603, 604 (1st Cir.1980). *See also Thomas v. Arn,* 474 U.S. 140, 154–55, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). A party may respond to another party's objections within ten (10) days after being served with a copy thereof.