**JEFFERSON INSURANCE COMPANY, Plaintiff,**

v.

**William C. ROBERTS, Defendant.**

**No. CIV.A.02–12135–LPC.**

United States District Court, D. Massachusetts.

Dec. 2, 2004.

Lawrence F. Boyle, Richard M. Dohoney, Morrison, Mahoney, & Miller LLP, Boston, MA, Steven E. Goldman, Goldman & Hellman, P.A., Fort Lauderdale, FL, Dennis M. Teravainen, Morrison Mahoney LLP, Boston, MA, for Jefferson Insurance Company, Counter Defendant.

Richard A. Eustis, Greenwald, Greenwald, & Powers LLP, Milford, MA, James B. Peloquin, Conn, Kavanaugh, Rosenthal, Peisch & Ford, LLP, Boston, MA, for William C. Roberts, Counter Claimant.

### MEMORANDUM AND ORDER ON MOTIONS FOR SUMMARY JUDGMENT

COHEN, United States Magistrate Judge.

In this case, plaintiff Jefferson Insurance Company (Jefferson) seeks a declaration to the effect that its hull and machinery insurance policy issued to the defendant William C. Roberts (Roberts) does not cover a particular loss and damages to the engines of a vessel owned by Roberts. The parties have consented to the jurisdiction of this court for all proceedings, including trial and entry of final judgment consistent with the provisions of 28 U.S.C. § 636(c) and Rule 4(c) of the Rules for United States Magistrate Judges in the United States District Court for the District of Massachusetts. The parties have filed cross-motions for summary judgment.

### I. Undisputed Material Facts

For purposes of the cross-motions for summary judgment, this court finds the following material facts to be undisputed:

1. On or about February 1, 2000, Roberts purchased the vessel, ICBM, for a purchase price of some $65,000. That vessel was built in 1988. That vessel was outfitted with two 600 horsepower engines (hereinafter the "engines") which were put into the vessel sometime after 1998, the date of the manufacture of those engines;

2. Roberts sought to obtain insurance on that vessel, including hull and machinery insurance. He first attempted to obtain that insurance through the auspices of Gibson & Meed Insurance in Wellesley, Massachusetts. He was unable to do so through Gibson & Meed. Then, based on word of mouth, he contacted Raymond H. Fyhrie of Performance Marine Associates; [1]

3. At all relevant times, Fyhrie was and is an independent insurance broker. He does not work for, and has never worked for, Jefferson in any capacity, and he has never had, nor been granted, the authority to act on

---

1. Fyhrie operates under the name of Performance Marine Associates. For simplicity, since it does not effect the result herein, we refer to the actions of Fyhrie and Performance Marine Associates as the actions of Fyhrie.

behalf of Jefferson or bind Jefferson in any respect; [2]

4. Based on his discussions with Roberts, Fyhrie, in May of 2001, sought a quotation for the requested for insurance from Jefferson. Sometime thereafter, Jefferson [3] gave Fyhrie a quote, which Fyhrie, in turn, transmitted to Roberts. (Plaintiff's Motion for Summary Judgment (# 24, Tab D). That quote was transmitted to Roberts in the format of a "Highlight Sheet" prepared by Fyhrie.) (*Id.*).[4] That "Highlight Sheet" provided, *inter alia:*

1. This quote and the highlight sheet are a general reference only to what coverage(s) the insurance policy

---

2. Plaintiff, in its statement of undisputed facts, says as much (Plaintiff's Statement of Undisputed Material Facts in Support of Motion for Summary Judgment (hereinafter Plaintiff's Undisputed Fact) (# 26, ¶¶ 9, 18, 19, 21). *See also,* Affidavit of Deborah J. Hiebert (# 37, ¶¶ 6, 7). Defendant, in his Defendant's Concise Statement of Material Facts as to which it is Contended that there Exists a Genuine Issue to be Tried (# 32), seemingly disputes this conclusion. *E.g., id.* at ¶¶ I.9, I.18, I.19, and I.21). That is to say, in each of the defendant's paragraphs referred to immediately above, defendant says that he challenges the "veracity" of Fyhrie's deposition testimony to that effect, and/or that he simply "disputes" those facts without referring to any other contrary fact of record.

Under settled circumstances, however, merely denying the existence of facts set forth (and supported by record evidence) in the context of a motion for summary judgment does not make a fact disputed. As indicated by our Court of Appeals (*Blanchard v. Peerless Ins. Co.*, 958 F.2d 483, 489 –490 (1st Cir. 1992)):

Since the record did not contain any prior statement inconsistent with Paul's deposition testimony, Blanchard was not entitled to the summary judgment presumption that Paul harbored a subjective intention to retain or resume residence in the Brown family household. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257, 106 S.Ct. 2505, 2514–15, 91 L.Ed.2d 202 (1986) (even though "state of mind" is a material issue, *nonmoving party cannot survive post-discovery summary judgment by mere denials, but must set forth facts from which factfinder might draw contrary inference* ). (Emphasis added).

*See also Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Sorac, Inc.*, 1991 WL 637106, * 2 (D.D.C.1991), where that cautioned:

If the moving party has supported its allegation as to the absence of disputed facts, mere denials of those allegations are insufficient to overcome a summary judgment motion. Defendants have not provided any evidence to suggest that Adrien was not in complete control of Sorac. For instance, the court does not have any evidence that Sorac had any other corporate officers or that anyone but Adrien had any influence over the corporate decision-making process. The only evidence before the court is defendants' own admission that Adrien was the sole shareholder and president of Sorac and that he had signature authority over Sorac's bank accounts. Given that defendants have provided no evidence to the court to counter their own admissions, no genuine issue is presented as to Adrien's ownership and control of Sorac. (Emphasis added).

In this case, his general denials notwithstanding, the defendant has not offered a single solitary fact of record from which an inference could be drawn that Fyhrie ever worked for Jefferson in any capacity, or that he had the authority to act on behalf of Jefferson or bind Jefferson in any respect.

3. The application for insurance submitted by Fyhrie on behalf of Roberts was actually submitted to the Monitor Company (Monitor), a Managing General Agent for Jefferson. As a Managing General Agent, Monitor had the actual authority to issue policies on behalf of Jefferson, and to otherwise bind Jefferson. Accordingly, once again for sake of simplicity, we refer to all actions and conduct by Monitor as the conduct of the defendant, Jefferson.

4. At his deposition (pp. 21–22), Fyhrie testified that the so-called "Highlight Sheet" was prepared by him and his company, PMA, to send to his customers. The Highlight Sheet is not a Jefferson document. On this, there is no contrary evidence.

or policies would provide and it is not intended to attempt to describe all of the various details pertaining to the insurance. *Actual coverage is detailed only in the policy of insurance and are at all times subject to the terms, provisions, conditions and exclusions as contained therein.*[5]

\* \* \* \* \* \*

3. *Damage to the vessel's machinery (engines, props, shafts, drives, etc.) is covered only for vessels up to 10 years of age,* and subject to the policy's exact wording and the hull & machinery deductible. (Emphasis added).

5. When Roberts viewed the language in Paragraph 3 of the Highlight Sheet immediately above, he questioned Fyhrie about its meaning. Fyhrie assured Roberts that the engines on Robert's vessel would be covered, even though the vessel was older than 10 years, since the engines were less than 10 years old.[6] Based on these discussions, Fyhrie, on behalf of Roberts, applied for insurance with an application to Jefferson in June of 2001. Upon receipt of that request, Jefferson issued its Policy No. JW299596 to Roberts, which included hull and machinery coverage, to Roberts on June 8, 2001, the same day that it received the application therefor from Fyhrie on behalf of Roberts;

6. Section A of that Policy described the Hull Coverage under that policy.

The Exclusions clauses under Section A provided, *inter alia:*
EXCLUSIONS—The following losses and consequences thereof are not covered by this policy:

\* \* \* \* \* \*

5. *With regard to vessels over 10 years of age,* damage to electrical and/or mechanical equipment including but not limited to *engine,* shaft, propeller, rudder, skeg, and outdrive, unless caused by. . . . [7] (Emphasis added).

7. That initial policy was, by its terms, scheduled to terminate on June 7, 2002. In anticipation of that expiration date, Roberts, *via* Fyhrie, received a quotation for renewal from Jefferson on a so-called "FAQ" Page. That so-called "FAQ" Page was also prepared by Fyhrie and not by Jefferson.[8] (Plaintiff's Motion for Summary Judgment (# 24, Tab E.).) Paragraph 2 of the "FAQ" page provided:
2. Damage to the vessel's machinery (engines, props, shafts, drives, etc.) is covered only for vessels up to 10 years of age, and *subject to the policy's exact wording* and the hull and machinery deductible. Vessels and equipment over 10 years of age are subject to restricted coverage on mechanical and electrical systems. *See policy for exact wording and specific details.* (Emphasis added)

8. Although the language set forth in Paragraph 2 of the "FAQ" Page prepared by Fyhrie differed in a little

---

**5.** Insofar as we are aware from the record currently before the court, defendant never chose to review the actual policy issued.

**6.** Fyhrie, in his deposition, says that he said no such thing. Nevertheless, for purposes of the cross-motions for summary judgment, this court accepts Roberts' representations to the contrary.

**7.** There were exceptions to Exclusion Clause 5 under Section A—*e.g.,* Fire or Lightening—but Roberts does not contend that any of those exceptions are applicable to this case.

**8.** See Fyhrie Deposition, pp. 27–28. And *see also,* note 4, *supra.*

respect from language of the same import in Paragraph 3 of the earlier Highlight Page prepared by Fyhrie, Roberts made nothing of it, since he did not notice any differences.[9] He accordingly renewed the insurance policy starting in June of 2002; [10]

9. On or about July 6, 2002, while in the term of the renewed policy period, Roberts was operating his vessel when a plastic bag was picked up by the intake tubes at the stern of the vessel. As a result of that occurrence, the 1998 twin 600 horsepower engines suffered significant damage; [11]

10. Roberts thereafter filed a notice of claim with Jefferson on account of the damage to the engines.

## II. *Summary Judgment Standard*

"Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)(quoting Fed.R. Civ. P. 1).

To survive a motion for summary judgment, the opposing party must demonstrate that there is a genuine issue of material fact requiring a trial. Fed.R.Civ. P., 56(e); *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). As the Supreme Court recently has made clear, the standard for granting summary judgment "mirrors" the standard for a directed verdict under Fed.R.Civ.P. 50(a). *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). That is, the inquiry focuses on "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. 2505. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348 (citing *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 289, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)).

A plaintiff may not obtain a trial merely on the allegations in its complaint, *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 289–290, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968), or by showing that there is "some metaphysical doubt as to the material facts," *Matsushita, supra,* 475 U.S. at 586, 106 S.Ct. 1348 (citations omitted). Where the non-moving party will bear the burden of proof at trial, Rule 56(c) mandates the entry of summary judgment against that party where it "fails to make a showing sufficient to establish the existence of an element essential to that party's case. . . ." *Celotex Corp. v. Catrett,* 477 U.S. at 322, 106 S.Ct. 2548. That is to say, to avoid summary judgment, the opposing party ". . .must produce at least some evidence *reasonably* affording an inference supporting the existence of a triable issue of fact [with respect to the

---

9. Roberts Deposition, pp. 35–36.

10. There is not a scintilla of evidence in the record before this court which suggests that Jefferson (including it agent, the Monitor Company, see note 3, *supra* ) was aware that Fyhrie used these Highlight and FAQ pages as a means of communicating with his (Fyhrie's) customers.

11. As indicated elsewhere, note 7, the incident which caused the damage to the engines did not fall within the exceptions to the exclusion clause.

element which the opposing party must establish at trial]." *Santiago, et al. v. Group Brasil, Inc.*, 830 F.2d 413, 416 (1st Cir.1987).

### III. *Liability of Jefferson*

By way of this action, Jefferson seeks a declaration and judgment to the effect that it is not liable to Roberts under the insurance policy on account of the damage to the engines on Robert's vessel incurred on or about July 6, 2002.

■ In resisting this declaratory relief, Roberts seemingly contends that the declaration is not warranted because (1) the contract of insurance in issue covered the damage to the engines; and/or (2) because of representations made to him by Fyhrie. Neither argument bears fruit.[12]

### *Contract*

Insofar as Roberts contends that the damage to the engines was a covered peril under the contract, and that he is entitled to recover on contract interpretation, he posits (Defendant's Opposition, p. 9):

> When interpreting the terms of an insurance contract, Courts have held that it is appropriate to consider "what an objectively reasonable insured, reading the relevant policy language, would expect to be covered." *MacLean v. Hingham Mutual Fire Ins. Co.*, 51

Mass.App.Ct. 870, 875, 750 N.E.2d 494 (2001).

That is, of course, a rather commonplace and unremarkable position, but, nevertheless, a position in which plaintiff can find no solace. And that is because the rule stated in *MacLean*, like similar authorities elsewhere, harken that the "reasonable expectations" of insureds is that which the putative insureds expect *after*, in defendant's own words, *"reading the relevant policy language"*. And therein lies the rub for the defendant. For the policy language applicable to this case is clear and unequivocal. It states, in terms of Exclusions from hull and machinery coverage:

The Exclusions clauses under Section A provided, *inter alia:*

> *EXCLUSIONS*—The following losses and consequences thereof are not covered by this policy:
>
>   *   *   *   *   *   *
>
> 5. *With regard to vessels over 10 years of age,* damage to electrical and/or mechanical equipment including but not limited to *engine,* shaft, propeller, rudder, skeg, and outdrive.... (Emphasis added).

■ A commonsense reading—indeed, any reading—of this language of the policy permits of but one conclusion, of one plain and everyday meaning. Damage to en-

---

**12.** This is an admiralty and maritime claim. Plaintiff correctly notes that, absent a controlling federal rule, statute, or precedent to the contrary, it is appropriate to look to state law in interpreting the terms of a marine insurance contract. *See e.g., Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337 (1955); *Ingersoll–Rand Financial Corp. v. Employers Insurance of Wausau*, 771 F.2d 910, 1986 A.M.C. 1109 (5th Cir.1985). Neither party has addressed the question of what state's law should apply. All parties, however, have assumed that Massachusetts' law applies, and this court will,

consistent with First Circuit precedent, assume that the law of Massachusetts applies in the circumstances of this case. *See e.g., Alternative System Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 33 (1st Cir.2004):

> We have stated before, and today reaffirm, that "[w]here ... the parties have agreed about what law governs, a federal court sitting in diversity is free, if it chooses, to forgo independent analysis and accept the parties' agreement." *Borden v. Paul Revere Life Ins. Co.*, 935 F.2d 370, 375 (1st Cir. 1991)

gines, no matter the age of the engines, is not covered *with regard to vessels over 10 years of age.* Under no circumstances can that policy language be read, as defendant would read it now, to exclude damage to engines if the *engines* are 10 years old or older.[13] Under no circumstances could Roberts state a claim for contractual relief, and plaintiff is entitled to a declaration to that effect.

### Agency (Actual, Implied, or Apparent)

■ The remainder of Robert's argument resisting the declaratory relief sought rests on an assumption, legal or otherwise, that Fyhrie, when he (Fyhrie) told Roberts that the exclusion would not apply to Roberts' engines since those engines were less than ten years old, said as much[14] as an agent of Jefferson and, as

such, bound Jefferson to that promise. On this, he is plainly wrong.

To the extent that defendant contends that Fyhrie was an actual agent, all of the record evidence shows that Fyhrie was an independent broker who serviced all of his customers (including the defendant) in that capacity, and that he was never an agent acting for or on behalf of Jefferson. Fyhrie testified as much. So, too, did Deborah Hiebert, of the Monitor Company, in her affidavit, aver as much. There is no admissible evidence whatsoever, indeed, not even an exciting suspicion, that Fyhrie was an actual agent of Jefferson.[15]

To the extent that defendant relies on some notion of "implied authority", he has failed to make any case. Implied authority is but a species of actual authority. The term is used to determine the powers entrusted by the principal to the agent. *See*

---

13. Insofar as we are aware from the record, at least the record compiled by the defendant in his statement of disputed and undisputed facts, defendant never even looked at the policy or the terms of the policy.

To be sure, he now says that Paragraph 2 of the FAQ Sheet, see Paragraph I.7, might be considered ambiguous on the subject. But this post haec rationalization provides no safe harbor for the defendant. For one thing, the FAQ Page was not part of the policy and did not purport to explicate all of the details and terms of that particular exclusion, cautioning the reader to read "...the policy's exact wording..." and to refer to the "...policy for exact wording and specific details." For another, the FAQ Page was not authored by, approved by, or ratified, by Jefferson—it merely being an informational sheet prepared by Robert's independent broker who was not an agent of Jefferson. And finally, as a door slammer, Roberts can hardly now point to the language of Paragraph 2 of the FAQ Page in an attempt to suggest that his reasonable expectations were that the engines would be covered. And that is precisely for the reason that Roberts, by his own admission, see Paragraph I.8, *supra*, did not even pay any attention to that portion of the FAQ Page.

14. As we have indicated above, note 6, Fyhrie denies having said any such thing, but we assume that he did only for purposes of the cross-motions for summary judgment.

15. To be sure, Roberts, in his affidavit (# 34, ¶ 8), avers:

8. I insured the Vessel with Jefferson Insurance in June 2001. I obtained the policy from Jefferson with the assistance of Raymond "Buzz" Fyhrie, *an insurance broker who acted as an intermediary between Jefferson and I.* When purchasing the insurance from Jefferson, I never spoke directly to a representative of Jefferson *other than Mr. Fyhrie.* Rather, Mr. Fyhrie communicated every aspect of the policy to me *on Jefferson's behalf* including, but not limited to, all of Jefferson's requirements prior to issuing the policy, a detailed description of the coverage and quotes regarding the cost to purchase the policy.

But that conclusory language surely cannot carry the day. That is to say, from all the record evidence shows, Roberts, who first says that Fyhrie acted as an "intermediary", has no basis from which to conclude that Fyhrie, in the legal sense, acted "on Jefferson's behalf."

*e.g.*, also Restatement (Second) of Agency § 7 cmt. c (1958). It assumes the existence of a principal-agent relationship, and is used to define the implicit powers entrusted to the agent to carry out his or her express authority. Since there is no evidence whatsoever that Fyhrie was, in fact, an actual agent of Jefferson—indeed, the record evidence is all to the contrary, defendant can not benefit from any notion of implied authority.

The last arrow in plaintiff's quiver appears to consist of apparent authority—*i.e.*, the actions of Fyhrie gave defendant reason to believe that he [Fyhrie] was an agent of Jefferson and, in such capacity, could bind Jefferson. On this theory, defendant says that the acts and deeds of Fyhrie in indicating that the engines would be covered under the policy notwithstanding the age of the vessel binds Jefferson to his [Fyhrie's] words. Once again, however, defendant misses the mark. Under settled Massachusetts law:

> ...apparent authority is that authority resulting from *conduct by the principal* which causes a third person reasonably to believe that a particular person has authority to make representations as his agent. *Hudson v. Massachusetts Property Ins. Underwriting Ass'n*, 386 Mass. 450, 436 N.E.2d 155, 159 (1982). The requirement that the *principal's conduct*

must engender a reasonable belief in the agent's authority implicates the theory of agency by estoppel. "If a third person goes on to change his position in reliance on this reasonable belief, the principal is estopped from denying that the agency is authorized."

*Veranda Beach Club Limited Partnership v. Western Surety Co.*, 936 F.2d 1364, 1377 (1st Cir.1991).

In this case, the defendant has not, and, indeed, cannot, point to one single solitary fact suggesting that the *principal's* [16] conduct caused the defendant to reasonably believe that Fyhrie had the authority to bind Jefferson to the interpretation of the Exclusions clause as defendant attributes that interpretation to Fyhrie. Indeed, insofar as the record before this court shows, there was never *any* communications whatsoever between Jefferson (or its agent, the Monitor Company) and the defendant—much less any sort of communication which would reasonably cause any person to believe that Fyhrie had the authority to bind Jefferson in any respect. The defendant simply cannot make out a case of apparent authority which would have the effect of binding Jefferson to any unauthorized representations made by Fyhrie.[17]

---

**16.** *I.e.*, Jefferson or its agent, the Monitor Company, see note 3, *supra*.

**17.** In his Answer (# 06), defendant has asserted various counterclaims against the plaintiff—*i.e.*, breach of contract, unjust enrichment, and violation of M.G.L. c. 93A.

To the extent a counterclaim in the nature of breach of contract is asserted against the plaintiff, plaintiff is entitled to judgment for the reasons set forth above.

In his opposition to the plaintiff's motion for summary judgment, defendant has not even alluded to, much less developed any cogent argument with respect to, his unjust

enrichment and Chapter 93A claims. Even if not waived and/or forfeited for that reason, neither claim has merit. To the extent that the counterclaim sounds in unjust enrichment, that claim rings hollow. To be sure, Jefferson received a premium for each of the two contracts of insurance. But, in turn, Roberts, as consideration therefor, received precisely that for which he bargained. There was no unjust enrichment.

To the extent that defendant relies on the customary and usual Chapter 93A claim, defendant has proffered nothing which suggests that the actions of the plaintiff were unfair in any respects.

## IV. *Conclusion*

For the reasons set forth above, given the clear and unequivocal exclusion of coverage for damage to engines on a vessel ten years or older, under no circumstances could plaintiff, Jefferson, be held accountable for any claim made by defendant, Roberts, on account of the damage to the engines of the vessel on or about July 6, 2002. Judgment, as prayed for, shall accordingly enter for the plaintiff and against the defendant. To the extent that defendant Roberts brings counterclaims against the plaintiff, judgment on all counts for the plaintiff and against the plaintiff.