**MCLAUGHLIN TRANSPORTATION SYSTEMS, INC. and Mayflower Transit, LLC, Plaintiffs,**

v.

**Barbara RUBINSTEIN, Defendant.**

**No. CIV.A. 03–11545–MBB.**

United States District Court, D. Massachusetts.

June 28, 2005.

Wesley S. Chused, Looney & Grossman, Boston, MA, for Mayflower Transit, LLC., McLaughlin Transportation Systems, Inc., Plaintiffs.

Andrew M. McGinnis, Attorney at Law, Belmont, MA, for Barbara Rubinstein, Counter Claimant.

*MEMORANDUM AND ORDER RE: DEFENDANT'S MOTION FOR PARTIAL JUDGMENT ON PLEADINGS (DOCKET ENTRY #16); PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT (DOCKET ENTRY #23); DEFENDANT'S MOTION TO STRIKE (DOCKET ENTRY #29); PLAINTIFFS' MOTION TO STRIKE (DOCKET ENTRY #34)*

BOWLER, United States Magistrate Judge.

Pending before this court are the following motions: a motion for partial judgment on the pleadings (Docket Entry #16) filed by defendant Barbara Rubinstein ("Rubinstein"); a motion for summary judgment (Docket Entry #23) filed by plaintiffs McLaughlin Transportation Systems, Inc. ("McLaughlin") and Mayflower Transit, LLC ("Mayflower") (collectively: the "Movers"); and a motion to strike (Docket Entry #29) filed by Rubinstein. Having conducted a hearing, the motions (Docket Entry ## 16, 23 & 29) are ripe for review. Also related to the foregoing motions is a motion to strike Rubinstein's summary judgment memorandum. (Docket Entry #34).

*FACTUAL BACKGROUND*

McLaughlin is a certificated interstate motor carrier of household goods. McLaughlin's business consists of transporting shipments of household goods for its customers between points in the State of New Hampshire and within a 450–mile radius of McLaughlin's Nashua, New Hampshire terminal. In those instances where household goods must be transported beyond 450 miles of McLaughlin's Nashua terminal an agency agreement between Mayflower and McLaughlin exists in which Mayflower agrees to complete the transport.

In March 2001, Rubinstein moved from 15 Maugus Avenue, Wellesley Hills, Massachusetts to 24 Sayles Avenue, Lincoln, Rhode Island (the "move"). Rubinstein hired McLaughlin to assist her with the move. In seeking McLaughlin's business, Rubinstein believed the company to be an agent of Mayflower.[1]

On or about March 2, 2001, Rubinstein entered into an interstate bill of lading contract with McLaughlin to transport her household goods. The bill of lading provided that McLaughlin received Rubinstein's shipment "subject to classifications, tariffs, rules and regulations including all terms printed or stamped hereon or on the reverse side hereof in effect on the date of issue of this bill of lading." (Docket Entry #1, Ex. A). In addition, Rubinstein purchased McLaughlin's "Green Light Guarantee," which provided for full replacement value protection. (Docket Entry #3, ¶ 35). Rubinstein's household goods were loaded into a McLaughlin truck at her

---

**1.** During late 2000 and early 2001, the Movers both published yellow page advertisements characterizing McLaughlin as an authorized agent of Mayflower. During her search for a moving company, Rubinstein discovered McLaughlin's contact information in Mayflower's Greater Boston Yellow Pages' advertisement. The advertisement listed McLaughlin as an agent of Mayflower. Paperwork used for the transaction contained the Mayflower name and logo. According to Rubinstein, during an initial interview with a McLaughlin representative, when Rubinstein made reference to Mayflower, the McLaughlin representative never attempted to refute Rubinstein's assumption that she was in fact dealing with an agent of Mayflower. Rubinstein specifically selected McLaughlin based on Mayflower's name and reputation.

Massachusetts address on March 2, 2001, and delivered to her Rhode Island address on or about March 7, 2001. Section V of McLaughlin's bill of lading contract provides, in relevant part, as follows:

> As a condition precedent to recovery, a claim for any loss or damage, injury or delay, must be filed in writing with the carrier within nine (9) months after delivery to consignee, as shown on the face hereof ... Where a claim is not filed or suit is not instituted thereon in accordance with the foregoing provisions, carrier shall not be liable and such a claim will not be paid.

(Docket Entry # 1, Ex. A, p. 2). The minimum filing requirements necessary to assert a valid claim for move damages are laid out in McLaughlin's published tariff rules, Tariff No. 400–M, Item 19(b) ("McLaughlin's tariff"). The minimum filing requirements under McLaughlin's tariff are as follows:

> A communication in writing from a claimant filed with a carrier within the time limits specified in the bill of lading or contract or carriage or transportation, and (i) containing facts sufficient to identify the shipment (or shipments) of property involved, (ii) asserting liability for alleged loss, damage, injury, or delay, and (iii) making claim for the pay-

ment of a specified or determinable amount of money . . . .

(Docket Entry # 1, Ex. F).

On the date of delivery, Rubinstein discovered damage to a lacquered tray. On or about March 12, 2001, she contacted McLaughlin and voiced her desire to file a damage claim to Robin Susi ("Susi"), McLaughlin's Customer Service Manager. Following the conversation, Susi sent Rubinstein a letter dated March 13, 2001, enclosing a claim form. In the letter, Susi specifically informed Rubinstein that:

> A claim must be submitted *in writing* within the time limitations specified in the bill of lading or warehouse receipt, and you must make a demand for a specified or determinable amount of money under the **Replace *or* Amount Claimed** column. Carefully review the reverse side of the bill of lading and claim form for additional information and instructions.

(Docket Entry # 3, Ex. 3).

During the months following the move, Rubinstien found several additional damaged articles. On August 28, 2001, Susi received a telephone call from Rubinstien's lawyer, Attorney Andrew McGinnis ("McGinnis"). During their conversation, Susi reminded McGinnis that, in accordance with McLaughlin's tariff and federal regulations,[2] Rubinstein was required to

---

2. Regulations for motor carriers governing "Principles and Practices for the Investigation and Voluntary Disposition of Loss and Damage Claims and Processing Salvage" are laid out by the Federal Motor Carrier Safety Administration at 49 C.F.R. § 370.3. This section is referred to throughout the record as the "FMCSA."

The minimum filing requirements governing interstate freight loss and damage claims found in the FMCSA are substantially identical to those provided by McLaughlin's tariff:

(b) Minimum filing requirements. A written or electronic communication (when agreed to by the carrier and shipper or

receiver involved) from a claimant, filed with a proper carrier within the time limits specified in the bill of lading or contract of carriage or transportation and:

(1) Containing facts sufficient to identify the baggage or shipment (or shipments) of property,

(2) Asserting liability for alleged loss, damage, injury or delay, and

(3) Making claim for the payment of a specified or determinable amount of money, shall be considered as sufficient compliance with the provisions for filing claims embraced in the bill of lading or other contract of carriage.

submit her claim in writing for a specified or determinable amount of damages within the nine month time frame prescribed by the bill of lading.

McGinnis then wrote McLaughlin by letter dated November 29, 2001 (the "November 2001 letter"), presenting Rubinstein's claim for damage. The November 2001 letter reads as follows:

> Your company, McLaughlin Transportation Systems, Inc. (MTSI), packed Rubinstein's household goods on or about February 27 and 28, 2001, at her previous address, 15 Maugus Avenue, Wellesley, MA 02181, picked up the goods on or about Friday, March 2, 2001, from her previous address, and delivered them to her at her current address on or about Thursday, March 8, 2001 (the "Move").
>
> For her Move, Ms. Rubinstein paid for full replacement value protection without deductible under the McLaughlin Green Light Guarantee, contract 61202400082, dated 2/21/01.
>
> As a result of her Move with MTSI, Rubinstein suffered loss, damage, injury, and delay for which MTSI is liable. Rubinstein claims payment of $100,000 as a result. This is the claim anticipated by your letter to Rubinstein dated March 13, 2001.
>
> I will provide further particulars in due course.

(Docket Entry # 3, Ex. 4). Documents attached to the complaint, as well as an admission, establish that the $100,000 was, at most, an estimate and, at worst, a figure simply inserted because it was the maximum allowable amount under a guarantee policy. The figure was not based upon an estimate of the amount of damage to Rubenstein's household articles.

According to Rubinstein, her new house in Rhode Island had undergone renovation through the spring of 2001. It took Rubinstein until August to finish unpacking and to identify all the damaged and missing goods. Due to her "physical limitations," Rubinstein was only able to work for four to five hours per day. (Docket Entry # 41). After Rubinstein realized that her losses would have to be documented, it took her several months to obtain an qualified appraiser.[3] Eventually, while docent training at the Rhode Island School of Design Museum, Rubinstein learned of an appraiser by the name of Irene Austin–Gillis ("Austin–Gillis").

Rubinstein first contacted Austin–Gillis in September or October of 2001. On November 13, 2001, Austin–Gillis conducted an inspection of Rubinstein's damaged property.[4] Austin–Gillis' appraisal report, which listed all of Rubinstein's damaged property and the costs associated with each item (the "appraisal"), was completed on December 8, 2001, and released to Rubinstein on December 31, 2001.

On December 18, 2001, McLaughlin replied to McGinnis (the "December 2001 letter") and denied Rubinstein's claim for non-compliance with the minimum claim filing requirements of the FMCSA and McLaughlin's tariff. Specifically, the December 2001 letter states, "We regret to advise that your claim cannot be honored due to the fact that a description of the damage to each item; and a demand for a specific, or determinable, amount of money

---

49 C.F.R. § 370.3.

**3.** Rubinstein first consulted the local telephone directory, but only found appraisers of real estate who were unable to offer her any referrals. Rubinstein also requested referrals from her insurance agent who was also of no assistance.

**4.** Before conducting an inspection Austin–Gillis required an initial deposit, which took Rubinstein time to arrange.

has not been stated." (Docket Entry # 3, Ex. 5).

McGinnis replied to this denial by letter dated February 21, 2002 (the "February 2002 letter"). In this response, McGuinnis included the language of the minimum filing requirements of McLaughlin's tariff, his interpretation of the language and how the November 2001 letter was in compliance. He noted that these tariff requirements do not mention "a description of the damage to each item" and that his claim for $100,000 was a "claim for the payment of a specified or determinable amount of money."[5] (Docket Entry # 3, Ex. 6). With the February 2002 letter, McGinnis enclosed a copy of the appraisal by Austin–Gillis. According to the appraisal, the value of the damaged items totaled $19,955. The February 2002 letter also included a list of items lost or stolen during the move, with a total value of $4,225.33; a list of items not listed in the appraisal but also damaged during the move, with a total value of $6,739; and a list of items which were replaced due to McLaughlin's mislabeling of boxes with a total value of $864.90. The total damages were calculated to be "at least $31,784.23." (Docket Entry # 3, Ex. 6). The appraisal provides further evidence that the $100,000 figure was, at most, an estimate.[6]

In response to the February 2002 letter, Susi sent a second letter, dated April 24, 2002 (the "April 2002 letter"), denying Rubinstein's claim on the basis that it was not timely filed. In this April 2002 letter, Susi explains McLaughlin's position that McGinnis' November 2001 letter contained "a demand of $100,000 for some damage that we are unable to identify so as previously stated, this does not constitute a legal claim. Please see Tariff 400–M, Item 19 paragraph (g)."[7] (Docket Entry # 3, Ex. 7).

After additional correspondence between the parties emphasizing their respective positions, McGinnis ultimately sent a demand letter for the damages on July 18, 2003 (the "demand letter"). (Docket Entry # 3, Ex. 12). In response, Wesley Chused, attorney for McLaughlin and Mayflower, wrote to McGinnis on August 14, 2003, denying Rubinstein's demand on the following grounds: (1) the Carmack Amendment preempts her claim for unfair claims settlement practices under Massachusetts General Laws chapter 93A, section 2 ("chapter 93A"); (2) she failed to comply with the filing requirement prescribed by Section V of the bill of lading;[8] and (3) Mayflower has no liability to Rubinstein.

### PROCEDURAL HISTORY

On August 15, 2003, McLaughlin and Mayflower filed the complaint for declara-

---

5. Unfortunately for Rubinstein, and as discussed *infra*, core case law in the First Circuit clarifies and interprets the above language as precluding estimates and approximations.

6. Indeed, based on Rubinstein's opposition to the Movers' motion for summary judgment, it is apparent that Rubinstein selected the $100,000 figure because it was the "maximum allowable claim under the bill of lading and the Green Light Guarantee." (Docket Entry # 39).

7. Paragraph (g) of McLaughlin's tariff states:

When a necessary part of an investigation, each claim must be supported by the original bill of lading (if not previously surrendered to the carrier), either the original paid bill for transportation service or a photographic copy thereof, and for each article, the nature and extent of such damage, the basis for the amount claimed, i.e., date article purchased, original cost, amount of depreciation, actual cash value at time of loss or damage and, in the case of damage, a repair estimate. (Docket Entry # 1, Ex. F).

8. See footnote number two.

tory judgment against Rubinstein. In the complaint, McLaughlin and Mayflower seek declarations that: (1) Rubinstein's claim against McLaughlin is time barred; (2) neither McLaughlin nor Mayflower is liable to Rubinstein because she failed to timely file her claim for a specified or determinable amount of money as prescribed by McLaughlin's bill of lading; (3) Mayflower is not liable to Rubinstein because Mayflower was not the carrier of her shipment; and (4) Rubinstein's state and common law claims are preempted by the Carmack Amendment.

Rubinstein filed an answer and counterclaims on October 28, 2003, claiming move damages in Count One and unfair claims settlement practices in Count Two, and seeking: (1) a preliminary order that McLaughlin and Mayflower conduct a good faith factual investigation of Rubinstein's claim for move damages; (2) a declaration that McLaughlin acted as Mayflower's agent at all pertinent times; (3) a declaration that Rubinstein timely notified McLaughlin and Mayflower of her claim for move damages or was excused from doing so; (4) a declaration that McLaughlin and Mayflower owe Rubinstein $31,784.23 plus interest, fees and costs; (5) a declaration that the Carmack Amendment does not preempt Rubinstein's claim for unfair claims settlement practices; (6) a declaration that McLaughlin and Mayflower did engage in unfair claims settlement practices under chapter 93A; and (7) a declaration that McLaughlin and Mayflower owe Rubinstein double or treble damages.

## I. PLAINTIFFS' MOTION TO STRIKE (DOCKET ENTRY # 34)

Rubinstein argues in her summary judgment memorandum that even if she failed to meet the timely filing requirements under McLaughlin's tariff and the FMCSA, she should be excused from filing a timely claim due to impossibility despite reasonably diligent efforts to do so.[9] The Movers assert that Rubinstein is barred from raising such argument at this stage in the litigation on the grounds that it presents "an entirely new and substantial issue"[10] that was not previously raised in Rubinstein's answer and counterclaim.

Although she does not expressly use the word "impossible," in two separate sections of her answer and counterclaims (Docket Entry # 3) Rubinstein indicates that she was "excused" from the timely notice requirements.[11] The language provided the Movers with adequate notice and does not raise an entirely new legal issue.

■ The First Circuit recognizes two instances in which failure to file a timely claim may be excused under case law dealing with the FMCSA. The first is where "the shipper was unable, despite the exercise of reasonable diligence, to ascertain the extent of its loss within the claim filing period." *Nedlloyd Lines, B.V. Corp. v. Harris Transport Co., Inc.*, 922 F.2d 905, 909 (1st Cir.1991). The second is where "conduct on the part of the carrier misled the shipper into believing that the filing of a timely written claim was unnecessary." *Nedlloyd Lines, B.V. Corp. v. Harris Transport Co., Inc.*, 922 F.2d at 909. Rubinstein's impossibility excuse falls reasonably in line with the first exception to

9. The argument can be found on pages 13 through 16 of Rubinstein's summary judgment memorandum.

10. See McLaughlin and Mayflower's motion to strike. (Docket Entry # 34).

11. See pages four and nine of Rubinstein's answer and counterclaim, in which she alleges to have given timely notice of "her move damages claim, or was *excused from doing so.*" (Docket Entry # 3) (emphasis added).

the timely filing requirement. In sum, the Movers' motion to strike (Docket Entry #34) Rubinstein's summary judgment memorandum is without merit.

## II. DEFENDANT'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS (DOCKET ENTRY #16)

■ In moving for partial judgment on the pleadings under Rule 12(c), Fed. R.Civ.P. ("Rule 12(c)"), Rubinstein requests a declaration that her November 2001 letter meets the minimum filing requirements enumerated in McLaughlin's tariff and the FMCSA. Resolution of this narrow issue is central to this dispute.[12] "Although not provided for by statute, a party may properly move for partial judgment on the pleadings to further the policy goal of efficient resolution of actions when there are no material facts in dispute." *North Oakland Voters Alliance v. City of Oakland,* 1992 WL 367096 * 2, (N.D.Cal. Oct.6, 1992) (citing *Chi–Mil Corp. v. W.T. Grant Co.,* 70 F.R.D. 352, 358 (E.D.Wis. 1976), *amended on other grounds,* 422 F.Supp. 46 (E.D.Wis.1976)).

In the Movers' opposition to this motion, they submitted several affidavits.[13] These affidavits are considered documents outside the pleadings. If said documents are accepted by this court for consideration,

the partial judgment on the pleadings motion must be converted to a motion for partial summary judgment and governed in accordance with the summary judgment standard. *Class v. Commonwealth of Puerto Rico,* 309 F.Supp.2d 235, 236 (D.P.R.2004). As a general matter, "It is within the sound discretion of the court to accept the evidence submitted outside the pleadings . . . ." *Class v. Commonwealth of Puerto Rico,* 309 F.Supp.2d at 236.

Exercising its discretion, this court excludes the affidavits from its consideration.[14] The judgment on the pleadings motion presents purely a legal question and can be properly resolved by the undisputed facts included in pleadings. In an effort to narrow pretrial issues, disposition of this matter by partial judgment on the pleadings is appropriate.

## JUDGMENT ON THE PLEADINGS STANDARD [15]

Rule 12(c) allows a party to move for judgment on the pleadings after filing an answer. It is well settled that judgment under Rule 12(c) is permitted only when it is based on the pleadings. *Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend,* 163 F.3d 449, 452 (7th Cir.1998). Pleadings include the complaint, the answer and "any written instru-

---

**12.** The Movers insist that Rubinstein's November 2001 letter does not constitute a valid damage claim. This matter is of particular importance to the adjudication of this case. If the November 2001 letter is found inadequate to satisfy the minimum filing requirements, Rubinstein is precluded from recovery as such a finding would render her February 2002 claim time barred. If, however, the November 2001 letter is found adequate, the untimeliness of her February 2002 claim is not necessarily fatal.

**13.** The affidavits include those authored by Wesley Chused (Docket Entry #20), Susi

(Docket Entry #21) and Terry Webb (Docket Entry #22).

**14.** The Movers also offer the affidavits in *support* of the their motion for summary judgment. This court excludes them from consideration only for purposes of the Rule 12(c) motion.

**15.** The standard for judgment on the pleadings is the same regardless of whether the motion addresses the entire case or only a portion of it.

ments attached as exhibits." [16] *Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend,* 163 F.3d at 452.

■ In reviewing the pleadings, this court must accept "all of the non-moving party's well-pleaded factual averments as true and draw all reasonable inferences in [its] favor." *Feliciano v. State of Rhode Island,* 160 F.3d 780, 788 (1st Cir.1998). Judgment on the pleadings is not permissible "unless it appears beyond a doubt that the nonmoving party can prove no set of facts in support of [its] claim which would entitle [it] to relief." *Feliciano v. State of Rhode Island,* 160 F.3d at 788; *accord Santiago v. Morales Medina,* 943 F.2d 129, 130 (1st Cir.1991). "Thus, under Rule 12(c), courts need not credit conclusory statements or merely subjective characterizations, but rather plaintiffs must set forth in their complaint specific, nonconclusory factual allegations regarding each material element necessary to sustain recovery." *Class v. Commonwealth of Puerto Rico,* 309 F.Supp.2d 235, 236 (D.P.R.2004).

Applying the Rule 12(c) standard as set forth above, this court turns to the Movers' arguments, the minimum filing requirements, and the contents of the November 2001 letter to evaluate its legal sufficiency to serve as a proper claim for damages.

## DISCUSSION

The minimum claim filing requirements are enumerated in McLaughlin's tariff and the FMCSA at 49 C.F.R. § 370.3. Both require that a claim "(1) [c]ontain[ ] facts sufficient to identify the ... shipment, (2) assert[ ] liability for alleged loss, damage ... and (3) make[ ] claim for the payment of a specified or determinable amount of money." 49 C.F.R. § 370.3. The only claim filed by Rubinstein prior to the nine month timely filing deadline was the November 2001 letter claiming damages of $100,000.[17] Thus, if the November 2001 letter failed to meet the minimum filing requirements, Rubinstein's claim cannot survive. *See Nedlloyd Lines, B.V. Corp. v. Harris Transport Co., Inc.,* 922 F.2d at 908 ("[p]ermitting an inadequate claim to toll the statute of limitations for the filing of suit would frustrate the regulatory purpose of encouraging voluntary settlement").

The Movers do not dispute that the November 2001 letter sent by Rubinstein satisfied the first two prongs of the minimum filings requirements. The Movers do, however, assert that Rubinstein's demand of $100,000 in damages did not constitute a "specific or determinable amount." [18]

In interpreting the FMCSA's minimum filing requirements, "the First Circuit has consistently been characterized as a 'strict compliance jurisdiction.' " *Bruker Instruments, Inc. v. Bay State Moving Systems, Inc.,* 15 F.Supp.2d 156, 160 (D.Mass.1998) (quoting *Landess v. North American Van Lines, Inc.,* 977 F.Supp. 1274, 1281 (E.D.Tex.1997)). In "strict compliance"

16. The complaint and answer (Docket Entry ## 1 & 3) attach all of the relevant document, including the bill of lading, McLaughlin's tariff, the letters and the appraisal.

17. Rubinstein's household goods were delivered to her Rhode Island home on or about March 7, 2001. Thus, the nine month claim filing deadline would have been on or about December 7, 2001. The February 2002 letter does not meet this deadline.

18. The Movers also argue that the November 2001 letter fails to provide sufficient supporting documents, namely a description of the damage to each item. This court declines to address whether the minimum filing requirements of the FMCSA or McLaughlin's tariff require such supporting documents because, as discussed *infra,* Rubinstein's claim fails to state a specific or determinable amount.

jurisdictions, estimations and approximations have been held to be insufficient to meet the specific or determinable element of the minimum filing requirements. *Bruker Instruments, Inc. v. Bay State Moving Systems, Inc.*, 15 F.Supp.2d at 160 (the plaintiff's request for damages that "could exceed $75,000" did not constitute a claim for a specified or "determinable amount"); *see also Delphax Systems, Inc. v. Mayflower Transit, Inc.*, 54 F.Supp.2d 60, 64 (D.Mass.1999) ("Delphax's offering a 'rough estimate ... that the damage will be in the $40,000 to $50,000 range' fails to make a claim for a specified or determinable amount"), *Bobst Division of Bobst Champlain, Inc. v. IML–Freight, Inc.*, 566 F.Supp. 665, 669 (S.D.N.Y.1983) (claim for "approximately $100,000" was not a specified amount).

■ Rubinstein argues that her claim nevertheless satisfied the minimum filing requirements because the $100,000 is not an approximation, but rather, a definite amount. It is true that unlike the demands in *Bruker, Delphax* and *Bobst*, $100,000 is a definite amount. Notably, however, based on the evidence provided in the pleadings, it is clear that the $100,000 figure in no way relates to the actual damage to Rubinstein's household goods.[19] As the Movers correctly point out, Rubinstein's interpretation of the specified or determinable requirement would allow a claimant to submit *any figure*, so long as it is definite, and thereby meet the minimum filing requirements.

The function of the FMCSA is to facilitate "voluntary resolution [of claims] by ensuring that both shipper and carrier have adequate information to evaluate liability and the extent of damages." *Nedlloyd Lines, B.V. Corp. v. Harris Transport Co., Inc.*, 922 F.2d at 908. If, under First Circuit case law, estimates are considered insufficiently specific and determinable to allow carriers to evaluate liability, it does not follow that Rubinstein's submission of an amount unrelated to her actual damages would satisfy this requirement. Allowing claimants to submit any damage figure to satisfy the minimum filing requirements would not effectuate the policy goal outlined in *Nedlloyd Lines*.

The motion for partial judgment on the pleadings (Docket Entry # 16) therefore lacks merit.

III. *PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT (DOCKET ENTRY # 23)*

The Movers' motion for summary judgment asserts the same arguments as their opposition to Rubinstein's motion for partial judgment on the pleadings: (1) that Rubinstein failed to timely file her claim with McLaughlin under the terms of McLaughlin's bill of lading and the FMCSA; (2) that there is no genuine issue of fact that Mayflower was involved with Rubinstein's shipment; and (3) that Rubinstein's Count Two counterclaim is preempted by the Carmack Amendment. Rubinstein opposes the Movers' motion for summary judgment.

*SUMMARY JUDGMENT STANDARD*

Rule 56(a), Fed.R.Civ.P., allows the claimant to move for summary judgment at any time after the commencement of the

19. Nowhere in her answer or counterclaim, does Rubinstein assert that the $100,000 figure is in fact related to her actual moving damages. Indeed, the February 2002 letter demonstrates that the $100,000 was, as most, an estimate or approximation of the amount. Therein, McGuiness attaches the appraisal which, although it provides greater specificity, still notes a total replacement value of *"at least* 31,784.23." (Docket Entry # 3) (emphasis added).

action. Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Seaboard Surety Co. v. Town of Greenfield,* 370 F.3d 215, 218 (1st Cir.2004). All reasonable inferences must be made in the light most favorable to the non-moving party. *Barbour v. Dynamics Research Corp.,* 63 F.3d 32, 36 (1st Cir. 1995).

## DISCUSSION

### A. The Minimum Filing Requirements

Employing a summary judgment standard of review, Rubenstein likewise fails to meet the minimum filing requirements under McLaughlin's tariff and the FMCSA. Furthermore, considering Rubinstein's own assertions in her summary judgment opposition (Docket Entry # 39) set forth in footnote six,[20] the $100,000 is not a determinable amount of damage, but corresponds to the maximum allowable claim under the bill of lading and applicable guarantee policy.

This court may not award summary judgment against Rubinstein, however, if Rubinstein is able to show that she was excused from such requirements.[21] The First Circuit recognizes two exceptions to

the timely filing requirements of the FMCSA: (1) where "the shipper [is] unable, despite the exercise of reasonable diligence, to ascertain the extent of its loss within the claim filing period;" and (2) "where conduct on part of the carrier [mislead] the shipper into believing that the filing of a timely written claim was unnecessary." *Nedlloyd Lines, B.V. Corp. v. Harris Transport Co., Inc.,* 922 F.2d at 909. Rubinstein asserts that the first exemption applies.[22]

In order to prevail against summary judgment, Rubinstein must demonstrate that she took "all appropriate steps under the circumstances to obtain an actual or determinable value of a potential claim" within the nine month claim filing deadline. *Cherkis v. Atlas Van Lines, Inc.,* 59 F.Supp.2d 203, 207 (D.Mass.1999) (citing *Nedlloyd Lines, B.V. Corp. v. Harris Transport Co., Inc.,* 922 F.2d at 909). In support of her argument, Rubinstein notes that it took her until August 2001 to finish unpacking and to discover all the damage that occurred during the move. Rubinstein cites her "physical limitations" and the fact that her new house was being renovated as the causes for the delay. Rubinstein further asserts that, while she made reasonable attempts to find an appraiser, several months passed before she was able to find a qualified individual. Rubinstein argues that these facts demon-

---

**20.** *See Nieves v. University of Puerto Rico,* 7 F.3d 270 (1st Cir.1993) ("even though a party may not generate a trial-worthy dispute at summary judgment merely by presenting unsubstantiated allegations in its memoranda or briefs, a party may nonetheless concede facts *adverse* to its position on summary judgment") (emphasis in original).

**21.** Rubinstein did not argue that she was excused from the timely filing deadline in her motion for partial judgment on the pleadings. (Docket Entry # 16). Nor were sufficient facts supplied in the pleadings that would

lead a reasonable fact finder to reach this conclusion. Therefore, the issue was not addressed in the previous discussion surrounding the motion for partial judgment on the pleadings.

**22.** As to the second exemption, this court finds no evidence, nor does Rubinstein allege, that McLaughlin in any way mislead Rubinstein into believing that the ordinary nine month timely filing requirements were not in effect. All evidence in fact points to the contrary.

strate her reasonably diligent efforts to ascertain the extent of her damages.

█ While this court appreciates that Rubinstein did, in fact, make an effort to determine the actual amount of damages, based on the evidence presented, it does not follow that Rubinstein took "all appropriate steps under the circumstances." Rubinstein was first put on notice of her property being damaged on or about March 7, 2001, the date of delivery, when she discovered damage to a lacquered tray. Rubinstein does not indicate exactly when she began searching for an appraiser, only that the process took "several months." It is unclear what, if any, steps Rubinstein took to locate an appraiser and obtain an appraisal report once she became aware of damage to her property in early March.[23] The circumstances are, therefore, similar to those in at issue in *Bobst*, where the court found a lack of reasonable diligence because the claimant allowed several weeks to pass without expending his best efforts to obtain a damage appraisal. *Bobst Division of Bobst Champlain, Inc. v. IML–Freight, Inc.*, 566 F.Supp. at 671. *See also Cherkis v. Atlas Van Lines, Inc.*, 59 F.Supp.2d at 208 (finding no reasonable diligence where claimant failed to obtain an appraisal more than six months after becoming aware of the damage).

While this court notes the various setbacks described by Rubinstein, none are particularly extraordinary to the moving process. The purpose of the strict filing deadline is to ensure that carriers receive "timely notice of a potential claim ... so that they can initiate an investigation before records are lost or destroyed and the shipping process becomes a distant memory." *Cherkis v. Atlas Van Lines, Inc.*, 59

F.Supp.2d at 208 (citing *Intech, Inc. v. Consolidated Freightways, Inc.*, 836 F.2d 672, 675 (1st Cir.1987)). "Leisurely approaches and periods of procrastination are inconsistent with both the legislative goal of the Carmack Amendment and the standards applied by the courts." *Cherkis v. Atlas Van Lines, Inc.*, 59 F.Supp.2d at 208. Ultimately, Rubinstein fails to present sufficient evidence for a reasonable factfinder to conclude that "it was impossible for the shipper, through reasonable diligence, to ascertain the required information." *Cherkis v. Atlas Van Lines, Inc.*, 59 F.Supp.2d at 207.

### B. The Carmack Amendment's Preemption of Chapter 93A

██ Turning to the preemption arguments, "[t]he Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 11707, ... governs the liability of carriers for lost or damaged goods." *Rini v. United Van Lines, Inc.*, 104 F.3d 502, 503 (1st Cir.1997). The First Circuit has held that the Carmack Amendment preempts "all state laws that impose liability on carriers *based on the loss or damage of shipped goods.*" *Rini v. United Van Lines, Inc.*, 104 F.3d at 506 (emphasis in original). State law claims that are preempted "include all liability stemming from damage or loss of goods, liability stemming from the claims process, and liability related to the payment of claim." *Rini v. United Van Lines, Inc.*, 104 F.3d at 506. Count Two of Rubinstein's counterclaim alleges unfair settlement practices on the part of the Movers in violation of chapter 93A. (Docket Entry # 3). This state claim clearly falls within the category of liability stemming from the claims process.

---

**23.** Rubinstein argues that she was unable to finish unpacking and to identify all her missing and damaged items until August 2001.

This still provided Rubinstein approximately four months to obtain an appraisal.

Rubinstein argues that even if the claim of unfair settlement practice is preempted, she should nevertheless be allowed to recover attorneys' fees under chapter 93A. In support of her argument, Rubinstein cites *Missouri, Kansas, & Texas Railway Co. of Texas v. Harris*, 234 U.S. 412, 34 S.Ct. 790, 58 L.Ed. 1377 (1914), a Supreme Court case relied on by the court in *Rini*. The Court in *Harris* permitted a broad sweeping statute allowing for the recovery of reasonable attorney's fees for claims involving less than two hundred dollars to stand alongside the Carmack Amendment. *Missouri, Kansas, & Texas Railway Co. of Texas v. Harris*, 234 U.S. at 416, 34 S.Ct. 790, 58 L.Ed. 1377. In its reasoning, the Court noted that the statute "[did] not at all effect the ground of recovery, or the measure of recovery," but "deals only with a question of costs, respecting which Congress has not spoken." *Missouri, Kansas, & Texas Railway Co. of Texas v. Harris*, 234 U.S. at 421–422, 34 S.Ct. 790. Unlike the statute at issue in Harris, chapter 93A substantively effects the ground of recovery as well as the measure of recovery. Furthermore, if Rubinstein's chapter 93A claim were permitted to stand, even to the extent of allowing recovery of attorney's fees, the goal of the Carmack Amendment to provide uniformity for all carrier liability resulting from interstate shipments would be frustrated. *See Rini v. United Van Lines, Inc.*, 104 F.3d at 505. Accordingly, this court finds that as a matter of law Rubinstein's chapter 93A claim is preempted by the Carmack Amendment.

## C. *Mayflower's Agency over McLaughlin*

Additionally, Mayflower argues that because it had no participation in the Move and did not act as McLaughlin's agent, it is not liable for any damages Rubinstein incurred as a result of the move. The Carmack Amendment provides that:

> Each motor carrier providing transportation of household goods shall be responsible for all acts or omissions of any of its transporting agents which relate to the performance of household goods transportation services (including accessorial or terminal services) and which are within the *actual or apparent authority* of the agent from the carrier or which are ratified by the carrier.

49 U.S.C. § 13907(a) (emphasis added).

Pursuant to the agreement between McLaughlin and Mayflower, all moves within a 450 mile distance of McLaughlin's Nashua New Hampshire terminal, such as Rubinstein's,[24] are carried out solely by McLaughlin. Rubinstein's move fell within this category. Nevertheless, Rubinstein argues that McLaughlin acted under the "apparent authority" of Mayflower in recruiting Rubinstein's business and, therefore, Mayflower should be held liable.

■ "Massachusetts law recognizes apparent authority where 'conduct by a principal ... causes a third person reasonably to believe that a particular person ... has authority to enter into negotiations or to make representations as his agent.'" *Kansallis Finance, Ltd. v. Fern*, 40 F.3d 476, 480 (1st Cir.1994) (quoting *Hudson v. Massachusetts Property Ins. Underwriting Association*, 386 Mass. 450, 436 N.E.2d 155, 159 (1982) (citations omitted)); *accord Putnam v. DeRosa*, 963 F.2d 480, 484 (1st Cir.1992). If a third party goes on to change his position as a consequence of his or her reliance on this reasonable belief, "the principal is estopped from denying that the agency is authorized." *Kansallis Finance, Ltd. v. Fern*, 40 F.3d at 480.

---

24. Rubinstein's goods were transported from Wellesley, Massachusetts to Lincoln, Rhode Island: a distance of approximately 40 miles.

As justification for her reasonable reliance, Rubinstein points to yellow page advertisements indicating that McLaughlin was an agent of Mayflower and the appearance of Mayflower's logo on McLaughlin's paperwork.[25] While this evidence indicates a business relationship between Mayflower and McLaughlin, Rubinstein supplies no other evidence of conduct *by Mayflower* through which the company held McLaughlin out as its agent in Rubinstein's move. Mayflower did not participate in any aspect of the move. Rubinstein acknowledges that she did not sign any order of service or any other contract with Mayflower. The full payment for transportation services from the move was paid to McLaughlin. Other than the yellow page article, Mayflower was never in communication with Rubinstein. *See Jefferson Insurance Co. v. Roberts*, 349 F.Supp.2d 101, 108 (D.Mass.2004) (finding no apparent authority where no communications took place between principal and alleged agent).

In accordance with the foregoing discussion, Mayflower exercised neither apparent nor actual authority over McLaughlin's transport of Rubinstein's household goods. As a result, Mayflower cannot be liable for Rubinstein's move damages under the Carmack Amendment.

## IV. *DEFENDANTS'S MOTION TO STRIKE (DOCKET ENTRY # 29)*

Rubinstein moves to strike the affidavits of Susi (Docket Entry # 21) and Terry Webb ("Webb") (Docket Entry # 22), which were filed by McLaughlin and Mayflower in support of their opposition to Rubinstein's motion for partial judgment on the pleadings. Rubinstein argues that these affidavits are matters outside the pleadings and thus not covered by her Rule 12(c) motion. Inasmuch as this court did not consider these affidavits in ruling on Rubinstein's Rule 12(c) motion, the motion to strike is moot. That said, Rubinstein and the Movers are in agreement that the affidavits in question should properly be considered in a summary judgment proceeding under Rule 56, Fed.R.Civ.P. Thus, as noted in footnote 14, this court considered the foregoing affidavits in the course of ruling on the summary judgment motion.

## CONCLUSION

In accordance with the foregoing discussion, Rubinstein's motion for partial judgment on the pleadings (Docket Entry # 16) is **DENIED**; McLaughlin and Mayflower's motion for summary judgment (Docket Entry # 23) is **ALLOWED**; Rubinstein's motion to strike (Docket Entry # 29) is **DENIED** as moot; and McLaughlin and Mayflower's Motion to Strike (Docket Entry # 34) is **DENIED**. The parties shall appear for a final conference on July 12, 2005, at 2:30 p.m.

---

**25.** See footnote number three.